## CHARLESTON.

DEWING *et al. v.* HUTTON *et al.*

Submitted January 25, 1895—Decided April.13, 1895.

1. AGENT—LIEN FOR EXPENSES—TRANSFER OF POSSESSION.

An agent with unrestricted management of a mercantile, farming and general trading business, carried on in his name, with the right to buy, sell and exchange, has a lien on all the property accumulated in such business, and in his possession, for all advancements made, expenses and liabilities incurred, proper, necessary, or incident to such business, which is superior in right to any lien which may be created on such property by the reputed owner thereof; and while he may not, without the consent of those interested, transfer or assign such lien to another, yet he has the right to sell a sufficient amount of such property to satisfy such liabilities, or may transfer the possession thereof to a trustee, to be held by him until such liabilities are fully discharged, and the lien thereby extinguished.

2. AGENT—POSSESSION—TRUSTEE.

The possession of the trustee under such circumstances is the possession of the agent, and the lien is not released or waived.

3. AGENT—TRUSTEE.

Such trustee, with the consent of the interested parties, may sell the property and extinguish the lien.

4. CHANCERY COMMISSIONER'S REPORT—EXCEPTIONS.

When a commissioner to whom a cause is referred to settle large and intricate matters of account, containing many contested items, returns a report showing only an aggregation of items in accordance with his conclusions, and the report is excepted to for this reason, and the Circuit Court overrules such exceptions and confirms the report; on appeal this Court will reverse the decree of confirmation, and remand the cause, that a proper itemized statement of such accounts may be made.

L. D. STRADER and BROWN, JACKSON & KNIGHT for appellants.

JOHN BRANNON, JOHN W. MASON and BUTCHER & HARDING for appellant Hutton, cited 13 Pac. Rep. 442; Am. Dig. (1887) 1043; 1 Am. & Eng. Enc. Law 353; 23 Atl. Rep. 728; Am. Dig. (1892) 4231; Add. Con. App. p. 20, note 10; 14 S.

E. Rep. 849; Add. Con. App. p. 21, note 11; 1 W. Va. 109; 15 W. Va. 867; Story Ag. § 253; 1 Am. & Eng. Enc. Law 229; 1 Add. Con. 92 (bottom page); Am. Dig. (1887) 1045; Add. Con. App, 23, 24, note 13; 1 W. Va. 109; Am. Dig. (1890) 3101; 1 Add. Con. 87-89; 2 W. Va. 458; 1 Bates Part. 323-329; 1 Sto. Eq. Jur. §§ 307, 308, 315, 316, 323; 2 Add. Con. 778-9; Sto. Ag. 210-11; 138 U. S. 380; 129 U. S. 663; 79 Va. 158; 25 Gratt. 40; 21 W. Va. 617; S. E. Rep. 93; 17 Am. & Eng. Enc. Law 1054, 1055, 1056, 1061; 1 Am. & Eng. Enc. Law 372-381; 3 W. Va. 183; 16 S. E. Rep. 249; 1 Am. & Eng. Enc. Law 417, 418, 429, 435-6-7-8-9; 1 Gratt. 396; 9 W. Va. 206; 2 Add. Con. 381-2-6-7-8, 419; Dart. Vend. & Pur. 208, 215-16-17-18, 245; 3 Am. & Eng. Enc. Law 923; Am. Dig. (1892) 1846, 5233; 24 Atl. Rep. 18; 33 W. Va. 375, 386; 13 Atl. Rep. 956; Am. Digest (1888) p. 226, par. 164.

Ewing, Melvin & Riley and Butcher & Harding for the Arbogast Creditors, cited Code, c. 100, s. 13; Am. Dig. (1892) 4257; Id. (1890) 2571; 13 S. E. Rep. 383; 1 Gratt. 396; 8 W. Va. 291; 9 W. Va. 206; 10 W. Va. 35; 30 W. Va. 572, 579; 14 W. Va. 531, 548; 23 W. Va. 760, 771; 32 W. Va. 526.

W. T. Ice and E. D. Talbott for appellees, cited 6 Rand. 764 and 769; 3 W. Va. 561; Greenl. Ev. (11th Ed.) § 22; 10 Gratt. 198; 37 W. Va. 762; 27 W. Va. 639; 28 W. Va. 715; 29 W. Va. 116; 31 W. Va. 516; 31 W. Va. 137; 36 W. Va. 454; 38 W. Va. 670; 33 W. Va. 159; 26 W. Va. 710; 14 W. Va. 1; 21 W. Va. 698; 27 W. Va. 642; 28 W. Va. 379; 31 W. Va. 591; 32 W. Va. 591; 32 W. Va. 218; 28 W. Va. 715; 14 W. Va. 531; 19 W. Va. 459; 18 W. Va. 185; 38 Am. State Rep. 838; 23 W. Va. 760; 12 W. Va. 699; 23 W. Va. 724; 2 Hen. & Mun. 603; 6 Rand. (Va.) 509; 10 Leigh 155.

Dent, Judge:

Appeal of Elihu Hutton and others from a final decree rendered by the Circuit Court of Randolph county in a certain chancery cause therein pending at the suit of W. S. Dewing & Sons.

The circumstances which gave rise to this litigation are as follows, to wit: The plaintiffs, citizens of Kalamazoo,

state of Michigan, in the year 1885, sent defendant Winchester, an experienced timber man, into the state of West Virginia, with authority as their general agent, in whom they reposed great confidence, to buy timber lands for them. His agency was to be kept a secret, at least for a time, and purchases were to be made in his name; they to furnish the means, and pay him a salary of twenty five dollars per week.

Winchester on the 26th day of May, 1885, entered into a written contract with defendant Hutton—a man of wide experience and influence, and already in the business—to make purchases for him according to the stipulations and conditions contained in such contract. This was certainly within the scope of Winchester's agency, and inured to the benefit of the plaintiffs, who, by their many acts of acceptance, *etc.*, fully ratified what Winchester had done in this regard. This contract embraced lands within a certain boundary on the head waters of Cheat river, in the counties of Randolph and Pocahontas. A large territory was thus purchased, and passed into the possession and control of the plaintiffs, who, through their agent, began to cut and market the timber thereon.

In the meantime Winchester and Hutton entered into a partnership to buy lands on Gauley river and its tributaries; Hutton to do the buying, and Winchester to do the selling, at a minimum price of two dollars per acre; expenses to be deducted, and the profits to be equally divided between them. Afterwards B. L. Butcher was taken into the partnership, to assist in doing the work, in a legal capacity, and to have a share in the profits. Winchester wrote to the plaintiffs, telling them of this partnership arrangement, and proposing to them that they should take the lands at two dollars per acre—they to take his share of the profits, and pay for the land, including expenses and the profits that would be coming to the other members of the partnership; that this arrangement was to be kept a matter of secrecy between themselves. The plaintiffs at first declined to enter into the arrangement, but finally consented, with the understanding that Butcher was to be bought out, which was done and he was retired from the partnership. After-

wards Hutton was informed that the lands had been sold
to the plaintiffs at two dollars per acre, and plaintiffs fur-
nished the money to pay for the lands, the expenses and one
half the profits to Hutton. It was the consideration of the
fact that they were to have one half the profits that in-
duced plaintiffs to purchase these lands.

In the meantime Winchester and Hutton had entered
largely into the store and farming business at Huttons-
ville, in Randolph county, which was principally managed
by Winchester, through his agent, John C. Arbogast, in
whose name such business was run, and by him conducted
as manager. The fact that Winchester and Hutton were
tacitly understood to be behind him gave him standing and
credit, and a large amount of property was accumulated in
his name. Winchester used the money of the plaintiffs in
this business, pretending to them that it was going into
the land purchases, but with the understanding with Hut-
ton that if his earnings and interest in the land sales were
sufficient to cover the Arbogast investments, in a final
wind-up, Hutton was to have all the Arbogast property.
Being speculative and visionary, no other result was ever
contemplated by them, especially Winchester, but how he
was to derive any benefit from the arrangement is not made
to appear. W. S. Dewing, becoming aware of the extrava-
gant notions and transactions of Winchester, and the wild
chase he was leading Hutton, and fearing that his firm was
about to lose some money, owing to the fact that they ad-
vanced, as he believed, a much larger sum than they had
or would receive a return for, induced Hutton, without the
knowledge or consent of Winchester or Arbogast, to exe-
cute a deed of trust on all his property, including the Arbo-
gast property, for the purpose of securing the "payment of
the account of Dewing & Sons against said Elihu Hutton,
which approximately aggregates the sum of twenty five
thousand dollars, which sum is made up of cash advances
to said Hutton by said Dewing & Sons, through their agent,
A. H. Winchester, in the purchase of real estate in West
Virginia, subject, however, to settlement and adjustment
hereafter by the parties in interest, as to credits." This

deed was executed the 16th, and recorded the 17th day of November, 1888. John C. Arbogast, learning of said trust deed, strenuously objected thereto, and refused to be bound thereby, in so far as the property under his control was concerned—claiming that such property was not the property of Elihu Hutton, but was the property of Winchester, whose agent he was, and insisting at least that all debts contracted by him in relation to the business were entitled to be first paid out of the proceeds of the property. He saw W. S. Dewing, who agreed that his claim was just, and admitted to the various creditors in Wheeling and Baltimore that their debts against Arbogast ought to be paid, but refused to enter into any writing to this effect.

On the 26th day of November, 1888, Hutton and Arbogast, understanding that it was with Dewing's consent, so expressed in the deed, executed another deed of trust, conveying the Arbogast property, in trust, to secure the claim of Dewing & Sons against Hutton, and the Arbogast creditors, on an equal footing. This deed was objected to, and never recorded. Finally, on the 3d day of December, 1888, a third deed of trust was executed by John C. Arbogast and Arthur H. Winchester, trustee, conveying to Joseph F. Harding, trustee, all the Arbogast property, to secure the Arbogast creditors, *pro rata*, and was admitted to record the 5th day of December, 1888. The trustee under the last deed took possession of all said property, and was proceeding to administer the same, and pay the debts thereby secured, when the plaintiffs filed their bill, obtained an injunction, and had said property taken charge of by a receiver of the court, and sought to have their trust debt declared a first lien thereon. Defendant answered said bill, claiming that he owed plaintiffs nothing, but on a fair settlement they would be justly indebted to him, and prayed for such a settlement, and a decree for any amount that might be due him against plaintiffs. John C. Arbogast and his creditors answered, claiming that their debts should be first paid out of the trust funds, in accordance with the last deed. Other answers were filed, and general replications thereto, and special replications to affirmative matters. Plaintiffs

also filed an amended bill, seeking further relief against defendant Hutton and others. The cause was referred to a commissioner to ascertain and settle the various controverted matters between the parties. The commissioner returned his report, to which the defendants excepted, but the court overruled the exceptions, and entered a decree in favor of plaintiffs, granting the relief sought; and from this decree defendant Hutton and the Arbogast creditors appeal.

The following is the assignment of errors: "*First.* The court erred in allowing the said injunction, or, if not error in allowing the same, it was error not to dissolve the same upon the hearing of the cause. *Second.* It was error to attempt, under the pleadings in the cause, to make a general statement and settlement of the accounts between the plaintiffs and the petitioner, as the proceeding had for its object, as the plaintiffs allege, the execution of the trust, and the correction of an alleged misapplication of the funds of the personal estate conveyed in trust. *Third.* It was error to attempt a settlement of the partnership account between the plaintiffs and the petitioner, as was done by Commissioner Ward, who finds that there was a partnership between petitioner and A. H. Winchester, agent for the plaintiffs, as to the 'Gauley purchases.' This partnership could be settled only upon proper proceedings had for the purpose, to which B. L. Butcher would be a necessary party; and for that purpose a proper suit is now pending in the said Circuit Court wherein the petitioner is plaintiff, and the plaintiffs herein, B. L. Butcher and others, are defendants. *Fourth.* It was error to decree in said cause, in favor of the plaintiffs, more than twenty five thousand dollars, with interest from November 16, 1888, as a lien under the deed of trust of that date, because the said trust deed only secured that sum of money 'subject to settlement as to credits.' *Fifth.* It was error to decree the proceeds of sale of the merchandise, live stock, and other property of the business at Huttonsville carried on in the name of J. C. Arbogast, to the plaintiffs, to the exclusion of the creditors of said business, because the social assets of said business

should be applied first to the social creditors thereof. *Sixth.* It was error not to have settled said business at Huttonsville as a partnership, independent from the accounts and transactions between the plaintiffs and petitioner on account of other matters. *Seventh.* It was error in the court below to overrule the several exceptions taken by petitioner, being Nos. 1 to 9, inclusive, to Commissioner Ward's report of date December 16, 1892, and to confirm said report as to the matters excepted to, for the reasons stated in said exceptions, and now referred to and asked to be read herewith, found on page 141, *etc.*, of record. *Eighth.* It was error to confirm said Commissioner Ward's report, dated as aforesaid, because the account raised and stated by him between the plaintiffs and the petitioner embraced items of charges against the petitioner not secured by his said trust deed, which was intended to secure any indebtedness which might exist from him to the plaintiffs, made up of cash advances in the purchases of real estate only. *Ninth.* It was error to decree any sum of money to the plaintiffs against said petitioner, because from the proofs taken by said commissioner, filed with his report and made part of the record, it will appear that petitioner is not indebted to the said plaintiffs in any sum of money, but, on the contrary, they are largely indebted to him. *Tenth.* It was error to confirm Commissioner Ward's said report because the proofs taken before him at the instance of said plaintiffs clearly show that the petitioner is entitled to credits on account of transfers of lands made to them under the said contract with their agent, A. H. Winchester, of May 26, 1885, in excess of that allowed by commissioner by said report, aggregating a sum exceeding sixteen thousand dollars, a part of which was allowed petitioner in plaintiffs' account filed herein. *Eleventh.* And because the conclusions and determinations of the commissioner in making up his said report are not sustained either by law or the evidence in this cause, as appears from the record thereof herewith presented."

The following are the exceptions to the commissioner's report: "The defendant Elihu Hutton excepts to the report

of Commissioner J. B. Ward in this cause, to be filed for the January term of the Circuit Court of Randolph county, 1893, and now in the office of said commissioner for examination, for the following reasons: *Second.* Because by said report said commissioner finds that a partnership existed between the exceptor, Elihu Hutton, and A. H. Winchester, the agent of Dewing & Sons, in the matter of the Gauley land transactions, and, therefore, in equity, between Hutton and Dewing & Sons (a fact which is clearly proven in this cause by the evidence which should be filed with said report) and then, upon the hypothesis that said partnership has been dissolved, proceeds to settle said partnership upon the theory that a dissolution of a partnership is a settlement of that partnership, and, in casting the accounts between the parties, has so intermingled said partnership items with items of conceded personal matters of account that it is impossible for exceptor or his counsel to distinguish between them—a proceeding not warranted by the pleadings and proof in this cause. All of which, exceptor insists, is illegal, inequitable, and erroneous, and again asks that all proof taken by said commissioner, touching the matter hereinbefore set forth be filed with said report. *Third.* Because by said report said commissioner, without regard to the various items which go to make up the account of plaintiffs against exceptor filed in said cause, finds that exceptor has received from plaintiffs, upon certain commingled accounts growing out of partnership and personal matters between them, an aggregated balance of one hundred and thirty two thousand six hundred and sixty dollars and twenty eight cents, in such manner as to render it impossible for exceptor to know which items of said account are carried into said aggregate, and which are not, thus rendering it impossible for exceptor to compare the commissioner's findings with the proof in the cause; to all of which exceptor objects and protests, and asks that said commissioner be required to file an itemized statement of account, composing said aggregate so found by him, with his said report as part thereof. *Fourth.* Because by said report said commissioner, contrary to the pleadings and proceedings in this cause, and the rules

of law and equity applicable thereto, has carried into the aggregate aforesaid certain items of account between plaintiffs and exceptor, growing out of the said Gauley partnership reported by him, when the proofs filed before him clearly show that said partnership is wholly unsettled; and further because by said report said commissioner carries said items of partnership accounts into the aggregate credits reported to exceptor, and into the balance reported due from exceptor to plaintiffs, when the proof shows that, exclusive of said partnership matters, said plaintiffs are largely indebted to exceptor; and further because of the attempted settlement of said partnership matters by said commissioner, when said proofs clearly show that one B. L. Butcher, Esq., was a member of said partnership, that said partnership is unsettled, and that said Butcher is not before the court as a party to this suit; and further because said commissioner, by said report, assumes that the sale of said Gauley lands by A. H. Winchester, while acting in his dual capacity of partner of said exceptor and agent of Dewing & Sons—a fact *now* known to said Hutton at that time, as shown by the evidence before the commissioner—to said Dewing & Sons, was made with the consent of said exceptor, or is in any manner binding on him, because the evidence taken before said commissioner in this cause wholly fails to warrant such assumption or finding. And to sustain this exception reference is again made to the proofs and papers aforesaid, which are asked to be filed with said report, as a part thereof. *Fifth.* Because by said report said commissioner finds that exceptor, Hutton, does not deny that he received from the plaintiffs the several sums making the said aggregate of one hundred and thirty two thousand six hundred and sixty dollars and twenty eight cents, when in fact the pleadings and evidence in this cause not only clearly show that said exceptor denies owing any part of said sum to said plaintiffs, but that he also denies that he received any such sum from them on all accounts, and because said commissioner further finds by the finding of said report last aforesaid, in effect, that the items of plaintiff's account not disproved by exceptor stand proven.

simply because they appear on said account. *Sixth.* Because by said report said commissioner aggregates the credits to which he finds exceptor entitled, as against the account of the plaintiffs so aggregated as above at the sum of one hundred thousand seven hundred and forty eight dollars and ninety three cents, without reporting the items of exceptor's account filed in this cause which go to make up said aggregate, thus making it impossible for exceptor to compare said commissioner's findings with the proofs in said cause; to all of which exceptor obects, and asks that said commissioner be required to file an itemized statement of account composing said aggregate so found by him. And said exceptor further objects to said last named finding of said commissioner because said report shows on its face that the items considered by him in making up said aggregated credits were taken both from partnership and personal accounts. *Seventh.* Because by said report said commissioner disallows a large number of items appearing on exceptor's account filed in this cause against the plaintiffs, when the same are clearly proven by the evidence taken and filed before said commissioner, and, because under said findings of said commissioner in this particular, it is practically impossible for exceptor to tell which of the items of this said account have been allowed by said commissioner, and which disallowed. *Seventh a.* Because by said report said commissioner, after properly finding that exceptor is entitled to credit for certain items appearing on his account filed in this cause against the plaintiffs by virtue of and under the contract of May 26, 1885, for the purchase of the Cheat lands, disallows all the residue of the items of exceptor's said account claimed by him under said contract, because the lands for which said items were charged, respectively, were purchased, either after six months from the date of said contract, or were purchases made and conveyed by special warranty deeds, when said contract itself shows, when construed as a whole, that purchases thereunder are not limited to a period of six months; and further because the proof taken and filed before said commissioner clearly shows that the provisions of said contract were ex-

tended by parol agreement for sufficient length of time to include all the items of exceptor's account for lands purchased on Cheat; and further that the plaintiffs accepted said deeds of special warranty without objection, paid the purchase-money therefor, took possession of the lands so conveyed, and have held, occupied and used them continuously since. *Eighth.* Because said commissioner by said report finds that said exceptor, Hutton, is indebted to said Dewing & Sons in the sum of thirty one thousand nine hundred and eleven dollars, exclusive of interest, when the proofs taken by said commissioner, and papers filed with him (all of which should be filed with said report) clearly show that nothing is due the plaintiffs from this exceptor, under the pleadings in this cause, or under trust deed of November 16, 1888. *Ninth.* Because by said report said commissioner finds that the supposed debt so found by him to be due from exceptor to plaintiffs is a lien first in priority upon the personal property named in the trust deed of November 16, 1888, when the proofs in this cause clearly show that said property belonged to a partnership composed of said Elihu Hutton and A. H. Winchester, the agent of said Dewing & Sons, run in the name of John C. Arbogast, at Huttonsville, W. Va., and that it was so understood by the parties thereto at the time of the execution of said trust deed; and exceptor insists that all partnership debts shall first be paid out of said partnership effects, and further excepts to said last mentioned finding of said commissioner because he does not report that the legal title to said personal property passed to the trustee under the trust deed of December 3, 1888, instead of by the trust deed of November 16, 1888, and that the proceeds of the sale of said property should be applied to the discharge of the costs of executing the said trust of December 3, 1888, and the debts secured thereby, as, according to said proof, he should have done, and does not find that said personal property belonged to the partnership last aforesaid, and that said partnership was a part of the said Gauley partnership reported by him, as is clearly shown by the proofs and evidence, taken in this cause."

The exceptions of the Arbogast creditors and others are

similar to the ninth exception above, and therefore they are an unnecessary incumbrance, if here copied.

It is a matter of impossibility, in any reasonable space of time, to take up these prolix and extremely lengthy assignments of error and exceptions to the commissioner's report, and dispose of them in rotation. The attention of the learned counsel in this and other similar cases is respectfully called to the rules of this Court, to be found in volume 23 of the West Virginia Reports. If the counsel would acquaint themselves with, and endeavor to observe these rules, it would be a concession for which the Court would be truly grateful.

The two questions of main importance presented for consideration by this record are: *First.* Are the Arbogast creditors entitled to priority of payment out of the proceeds of the Arbogast property? *Second.* Has the commissioner made a proper statement and settlement of the accounts between the plaintiffs and the defendant Hutton?

For some reason, best known to themselves, neither plaintiffs nor defendants took the testimony of Arthur H. Winchester, and it is quite conspicious by reason of its absence. Sometimes it was needed, and its suppression must operate against the plaintiffs, and at other times against the defendant Hutton, as Winchester appears to have been the mutual friend and dual agent—seeking, with truly altruistic disinterestedness, to advance the interests of both without injury or detriment to the other. He wanted the plaintiffs to become rich off of their purchases through the defendant Hutton, and he wanted Hutton to thrive magnificently off of his income from the plaintiffs, while for himself he had no thought, except to rejoice in the success of his friends, brought about by his labors. In his zeal to serve two friends whose interests were at times adverse, he overreached himself, and managed to get their business affairs in such a tangle as to lose the confidence of both, and involve them in a legal conflict, for the solution of which his evidence ought to have great weight and bearing, yet it is rejected by both alike.

From the pleadings and the evidence, and the lack of

evidence, it is plain that there was no partnership existing between defendants Hutton and Winchester, either in his own right or as the agent for plaintiffs, as to the Arbogast property. If such a partnership existed, defendant Hutton should have alleged it in his answer, and have been in position to prove it, as the burden was on him to do so. In this he utterly fails. On the contrary it is perfectly apparent that no partnership existed; that the truth with regard to this property is that A. H. Winchester started all the Arbogast business with the money furnished by plaintiffs to buy lands, with the understanding that he was to control and manage such business through his agent, Arbogast, until a final settlement of plaintiffs' affairs with Hutton, and then, if the amounts coming to Hutton from the land transactions were sufficient to cover the investments in the Arbogast store and farming business, the same was to belong to Hutton. In the meantime the title to such property was to remain in abeyance, apparently in Arbogast under the control of Winchester, as the agent of the plaintiffs, to secure them from any loss by reason of the investment of the plaintiffs' funds in such property for the ultimate benefit of Hutton. March 12, 1888, Winchester, by letter, notified the plaintiffs of the true condition of this property, as the following extracts show, to wit: "In Arbogast's name, owing to fact I could put him into possession, while in my own name I could only hold it constructively. I hold not less than ten thousand dollars personalty—everything he has—and not less than same amount of his store." "Second (Gauley). While, as between you and myself, I am your agent, as between him and myself I am his legal partner, and, before the law, would be your trustee to hold a partnership with him. This was formed first on basis of half and half. Then, my only mistake, two to him and one to me—you—he carrying all risks. Then last winter changed back to half and half, but in consideration of our not only carrying the risk that no longer existed, but, if essential, to carry his private affairs to extent of his prospective earnings. Third. Out of both the above grew an element of risk to you, to protect from which I, as commissioner, hold

all the outside matter mentioned on other page, and am to do so until final settlement of each of the first two accounts, after which anything left is his, but nothing before the fact is ascertained." In this letter Winchester informs plaintiffs, in words that can not be misunderstood, of the condition of the Arbogast property; yet they make no attempt to repudiate the arrangement in any way, but it appears to be perfectly satisfactory to them until W. S. Dewing, becoming dissatisfied with his firm agent, without consulting him or obtaining his consent, secretly, by inducements and promises, obtains from defendant Hutton the deed of trust of the 16th November, 1888, attempting to convey the Arbogast property to secure an approximate balance, to be afterwards ascertained of twenty five thousand dollars due plaintiffs from Hutton. As the extracts from the letter above show, plaintiffs knew the condition of this property, and under whose possession and control it was, and that it was held in trust as security for the payment of the very claim, if any, secured by the trust deed, and so held by his firm's authorized agent. The effect of the acceptance of this deed of trust by the principals was to abrogate the arrangement made by their agent with regard to said property, except in so far as the rights of third parties had attached; one of the objects clearly being to oust the agency of Winchester with regard to said property. and turn the same over to another and different trustee. Mr. Dewing could have accomplished the same purpose by going to Winchester, and telling him that his agency was at an end, and that he himself would take charge of the Arbogast property and business. But he preferred to do indirectly what might be unpleasant for him to do directly; and he hoped, to some extent, by so doing, to repudiate the acts of Winchester, or at least avoid their ratification. If Winchester was holding this property as a private security for his own benefit, nothing could pass by the trust deed, except Hutton's possible future contingency, which might never happen. Therefore it was only by recognizing the agency of Winchester in so far as the advancements to Hutton were concerned, that the deed of trust could effect the purpose for which it was executed, in any de-

gree.   In either event the Arbogast debts must be first paid.
If it was Winchester's private holding, Hutton could have
no interest therein, and could convey none in trust without
Winchester's consent.   And if held by Winchester as agent
either for Hutton or Dewing & Son, or both, he was entitled
to retain the same until his debts and expenses incurred in
relation to such property were fully paid off and satisfied.
Being an unrestricted agent, with power to sell, he would
have the right to sell the same for the purpose of paying
such debts.   Arbogast, the agent of the trustee, would have
the same rights, especially when sustained therein by his im-
mediate principal.   Arbogast was the general agent of
Winchester, and known so to be, both to the plaintiffs and
the defendant Hutton, neither of whom ever raised a parti-
cle of objection to his agency; but he was permitted, in his
own name, to carry on the business of trader, merchant, and
farmer, buying and selling and contracting debts, all in con-
nection with such business.   And under section 13, chapter
100 of the Code, all the property, choses in action, stock, *etc.,*
acquired or used in such business, are made liable for the
debts of such person.   And any conveyance of such proper-
ty by the agent to secure the debts of the principal not con-
tracted by the agent, and for which he is in no wise liable,
would be on consideration not deemed valuable in law as to
him, and therefore null and void as to the creditors of the
agency business.   And any conveyance made by the princi-
pal would be abortive, to the same extent, and for a similar
reason.   Otherwise the grossest fraud could be perpetrated
by the hidden principal and his agent, the ostensible owner
of property, upon those innocently dealing with such
owner in relation to such property.   An agent has
a lien on the funds and property of the principal
in his possession and under his control for moneys
advanced or liabilities incurred when proper, neces-
sary, or incident to his agency.   Mechem, Ag. § 684; *Ruff-
ner* v. *Hewitt,* 7 W. Va. 585; 1 Am. & Eng. Enc. Law 428; 3
Am. & Eng. Enc. Law 333: Story, Ag. § 376.   Having such
lien, he has the right to pledge the property to the amount of
the lien.   *Warner* v. *Martin,* 11 How. 209.   "Where an agent

purchases goods in his own name, he is clothed with all the *indicia* of ownership, and has the right to either sell or pledge the goods." *Lect* v. *Wadsworth*, 5 Cal. 404.

An agent can not be deprived of his lien, without his consent, by an act of the principal. Arbogast had possession of the property in controversy, with every *indicia* of ownership, acting as the agent of Winchester. The plaintiffs and defendant Hutton deny any interest in the property, except such as the plaintiffs may have by virtue of Hutton's trust deed. If these separate pretensions be accepted, the property must be regarded as belonging to Winchester, and Hutton's deed passed no title to the trustee. And the deed of Arbogast and Hutton, having been made without Winchester's consent or knowledge, is invalid in so far as it secures any debts other than those belonging strictly to the agency. And, in any event of ownership, to such extent the last mentioned deed was invalid, for the reason that Arbogast, in executing it for such purpose without the consent of Winchester, as owner or trustee, exceeded his authority.

But the trust deed of the 3d of December, 1888, executed by Arbogast to secure the agency creditors, was rendered valid beyond controversy, by Winchester consenting thereto and uniting therein.

On the other hand, treating the property as conditionally Hutton's under the management and control of Winchester, as trustee, through Arbogast, as his agent and the ostensible owner, both Arbogast and Winchester have a lien on said property for all liabilities contracted in the management thereof, with the right to retain possession, and, being clothed with the power, the right to sell a sufficiency thereof to pay such liabilities, superior to the rights of Hutton, or plaintiffs, claiming through him. And, with the consent of all interested parties, they had the right to execute the trust for the continued security of the liabilities incurred, and thus merge their lien and possesion in the trustee, Harding, for their use and benefit. To this disposition of the property the evidence, by a decisive and convincing preponderance, shows that both plaintiffs and defendants consented. And this disposition was in accordance with the law.

Admitting that plaintiffs did not consent, then the possession of the trustee Harding remained the possession of Winchester and Arbogast, for the security of their liabilities, and continues in the receiver, for the reason that they have never surrendered their legal right to hold the property for any other purpose than the trust aforesaid; and if such trust for any reason, should not prove effective, they are entitled to a restoration of their possession and lien aforesaid. While an agent may not transfer or assign his lien to another, it being personal to himself, yet he may make another his agent or trustee to hold the property to which the lien attaches, for his benefit, until the lien is legally satisfied. *Bigelow v. Walker,* 58 Am. Dec. 164. Equity never requires an honest grantor to surrender a right not contemplated or included within the terms of an ineffective grant, and when the plaintiffs seek its aid they must be prepared to do equity. Plaintiffs may complain that their funds, through their agent, formed the basis of the property in controversy. When they repudiated and ignored the act of their agent in holding the property as a security for them, and charged the funds directly to Hutton, they waived the right to seize the property on the grounds of a misapplication and breach of trust, and affirmed the advancements made in excess of the land purchases. Any loss they may incur by reason thereof they may charge to their attempt to rid themselves of their agent, Winchester, by an indirect, instead of a straightforward course. If he had the "big head," their letters of praise and conduct of faith and trust lie at the basis of it. There is nothing in this case to indicate that he was acting otherwise than zealously, in good faith, in attempting to promote the respective interests of both the plaintiffs and defendant Hutton. He may have made mistakes and incurred losses. Such things are not uncommon. "It is human to err, but it is divine to forgive." Plaintiffs trusted him, and if, by giving him their confidence, and allowing him the use of their means, they led others to trust him, they should not expect to escape the consequences of their conduct to the injury of innocent parties misled there-

by. Of two innocent sufferers, the one least to blame has the better equity.

The sole question for us to decide is whether the agency lien of Winchester and Arbogast is entitled to priority, as to this property, over the lien acquired by plaintiffs by virtue of the deed of trust from Hutton. To this there can be but one answer, and that is that the Arbogast creditors, under the circumstances of this case, must be first paid out of the Arbogast property, and that the plaintiffs' trust lien, when rightly ascertained, must be postponed and made second in priority as against such property.

As a case of partnership in some respects analogous, see *Darby* v. *Gilligan*, 33 W. Va. 246 (10 S. E. Rep. 400); also *Baer* v. *Wilkinson*, 35 W. Va. 422 (14 S. E. Rep. 1)—which cases would be pointedly applicable if there was a partnership between Hutton and Winchester. The only interest, then, that plaintiffs have in the Arbogast property by virtue of the deed of the 16th of November, 1888, is the right to the residuum after the payment of the agency creditors. They therefore had such an interest in the property as justified the filing of their bill, and if losses are sustained by reason of the injunction, the removal of the trustee, and the appointment of a receiver, it will probably fall most heavily upon themselves. As the amount secured by the trust was indefinite, and subject to settlement, it could not be properly ascertained and fixed without a complete adjustment of all the transactions between the plaintiffs and defendant Hutton.

B. L. Butcher is not a necessary party to this suit, for the evidence shows that he long since parted with his interest in the Gauley partnership to his co-partners. This partnership was first formed between Winchester and Hutton. It was for a specific purpose. Lands were to be bought as low as possible, and Winchester was to sell the same for not less than two dollars per acre, and the net proceeds were to be divided between them. Winchester induced the plaintiffs to purchase the lands at the price named by agreeing that they should have his share of the profits, and thereby ostensibly led them to take his place in the partnership.

Defendant Hutton was satisfied with the price of two dollars per acre, as it realized a very handsome profit. One partner has the right to sell out to the other, and thus close the relation; and there appears to be no unsettled question, except as to the division or proper amount of the profits. It is true that defendant Hutton claims that this Gauley partnership had some connection with the Arbogast business, but the evidence fails to sustain any such claim, and his own conduct disproves it, supplemented as it is by the allegation of his answer.

There are a great many disputed items controverted by both plaintiffs and defendant Hutton in each other's accounts, and yet the commissioner without making an itemized statement, charges defendant Hutton with a total sum of one hundred and thirty two thousand six hundred and sixty dollars and twenty eight cents and credits him with a total sum of one hundred thousand seven hundred and forty eight dollars and ninety three cents, finding a net balance of thirty nine thousand nine hundred and ten dollars and forty one cents, including interest. The defendant excepted to the report for this reason, as he was unable to tell what items entered into these aggregate amounts, and therefore he could not intelligently except to the allowance or disallowance of any special item. This exception should have been sustained, and the report recommitted, with direction to the commissioner to make an itemized statement, showing item by item the credits, debits and all sums disallowed. In no other way can the court examine and pass upon such report, unless it accepts as a finality the action of its commissioner. Such, however, is not the law. A commissioner is intended to aid the court. This Court has no such officer, and, when this duty has not been properly performed, there is no alternative but to reverse the case, and send it back to be recommitted. To pursue any other course would be to try the whole controversy *de novo,* impose on this Court the duties of a commissioner, and the determination of the litigation as in a court of original, instead of appellate, jurisdiction.

There is one other exception to the commissioner's report

worthy of notice at the present time, and that is that the commissioner rejected from the defendant Hutton's credits all lands which were not purchased within six months of the date of the contract of the 26th May, 1885, or which were conveyed with covenants of special warranty. If plaintiffs obtained such lands and conveyances under and by virtue of said contract by extension of time or otherwise, and have possession and control thereof, without repudiating the same, they should be charged therewith; but each case must be determined in and of itself, which can only be done when a proper report is made.

For the foregoing errors the decree complained of is reversed, set aside and annulled, and this case is remanded to the Circuit Court, to be recommitted to the commissioner, with direction, without regard to his former reports, to make a complete itemized statement of all transactions between the defendant Hutton and the plaintiffs, by themselves or through their agent, Winchester, giving and showing all proper credits and debits, and each item disallowed; and to be further proceeded in according to the foregoing opinion and rules of equity.