# CHARLESTON.

## FARNSWORTH *v.* NOFFSINGER.

Submitted January 19, 1899—Decided April 15, 1899.

1. DEED—*Competency, of Grantor—Presumption of Law.*
   The presumption of law is that the grantor in a deed was sane and competent to execute it, unless the contrary be made clearly to appear. [p. 412].

2. EVIDENCE—*Opinion Evidence—Competency—Experts*
   Mere opinions of witnesses, not experts, as to sanity and competency to do a given act, are of little weight, unless based on facts which give good reason for such opinions; and, if the facts are frivolous or unimportant, the opinions of such witnesses, based upon them, are of little weight. [p. 412.]

3. DEED—*Competency of Grantor—Fraud—Undue Influence.*
   Where a party to a deed or other contract has legal mental capacity to make it, and there is no fraud or undue influence moving him to the act, the deed or contract connot be impeached simply because it is imprudent, unreasonable, or unequal. [p. 413].

4. Evidence—*Notary Public—Experts—Physician—Deed*.

   The evidence of a notary taking the acknowledgment of a deed, who is also a competent physician and expert as to mental disease, that the grantor was competent to execute it, is entitled to very great weight. [p. 413].

5. Deed—*Competency of Grantor*.

   The very time of the execution of a deed is the material or critical time to be considered upon the inquiry as to the grantor's capacity. [p. 413.]

6. Deed—*Undue Influence—In Vinculis*.

   To annul a deed for undue influence, it must be shown that the party had no real free will, but stood *in vinculis*, so as to destroy free agency, and substitute the will of another for his. [p. 414].

7. Deed—*Contracts*.

   In determining whether a deed or contract is hard, or unfair, or unequal as to one of its parties, regard must be had to the disadvantage, change in plan of life, or other sacrifice of the other party flowing from it. [p. 417.]

Appeal from Circuit Court Putnam County.

Action by Sarah Farnsworth against Simon Noffsinger. Decree for defendant, and plaintiff appeals.

*Affirmed.*

Rankin Wiley, for appellant.

Bowyer and Green, for appellee.

Brannon, Judge:

This is an appeal from a decree of the circuit court of Putnam County dismissing a chancery suit brought by Sarah Farnsworth against Simon Noffsinger. The bill states that by deed dated 31st of October, 1889, Farnsworth conveyed to Noffsinger all her interest in a tract of two hundred and fifty-four and three-quarters acres of land in Putnam County in consideration of fifty dollars in hand paid, and fifty dollars to be paid annually during said Farnsworth's life, and the further consideration that Noffsinger should board Farnsworth during her life, and provide suitable furniture for three rooms for her use and occupancy in the residence house on said tract during her life, and pay her funeral expenses; that said deed also conveyed to the said Noffsinger all the personal property on the said farm, consisting of cattle, hogs, farming implements, and household and kitchen furniture; and that

by an instrument dated August 3, 1891, signed by said parties, said Noffsinger leased to the said Farnsworth the said farm for her life at an annual rental of fifty dollars, she paying the taxes and releasing Noffsinger from the obligations .imposed upon him by the deed. The bill charges that Sarah Farnsworth was mentally incompetent to execute said papers, and that they were obtained from her by the importunity, false promises, and misrepresentations of Noffsinger, and by his undue influence over her, owing to the fact that she had confided all her business affairs and trusted him as a confidant (if that word can be here used), and that she did not understand the import of the papers, and that she was at the time greatly distressed in mind over the death within the year of a son, and then a husband, and then another son, leaving her a widow and childless at the age of sixty-two or sixty-three years.

First, let us see whether Mrs. Farnsworth can overthrow the deed on the ground of mental incapacity. In the first place, she was not an aged woman, and we cannot say that age detracted from her capacity. We must remember, as a first point here, that the presumption of law is that the grantor in a deed was sane and competent to execute it at the time of its execution. *Delaplain* v. *Grubb*, 44 W. Va. 612, (S. E. 201.) It is useless to detail evidence here.  There is considerable evidence by nonexpert witnesses that, owing to her recent bereavements, Mrs. Farnsworth was incompetent to execute the deed; or it would be more proper to say, not that she was incompetent from insanity or inherent weakness of mind, but that by reason of distress she was not in fit condition to transact important business prudently or with proper regard for her own interests, as that is the full effect of such opinion evidence, and all that the witnesses who give it mean, as a reading of the evidence fairly shows.  Therefore this evidence does not establish insanity or mental disability to overthrow a party's acts, taken at most. But I will add, as to this opinion evidence, the legal consideration, well established, that "the mere opinions of witnesses not expert are entitled to little or no regard, unless supported by good reasons, founded on facts which warrant them; and if the reasons and facts upon which they are founded are frivolous, the opinions

of such witnesses are worth but little or nothing." *Jarrett* v. *Jarrett*, 11 W. Va. 584. I have not met with a case to which that holding is more applicable than this one. These witnesses give their opinions of Mrs. Farnsworth's incapacity to make these papers, and yet give no facts upon which to base such opinion, except in a few instances, and then the facts are of unimportant and even frivolous character; the most important, I may say, being her frequent visits to the near-by graves of her loved and lost ones, and her lamentations for them. Such visits were not unusually frequent, especially as the graves were in the country and near at hand. I can hardly cite any other circumstance on which to base an opinion of her incapacity. That evidence, if it stood alone, would not support the case, under the rule of presumption of sanity and capacity, and that he who would overthrow a solemn deed—into which many considerations enter, as I shall presently seek to show—carries a very heavy burden on his shoulders; but, when we turn to the evidence on the other side, the case becomes very decided to support that side, as the circuit judge found upon all the evidence. In the first place, there is a preponderance of such mere naked opinion evidence, but better based on facts than that of the plaintiff, going to sustain the capacity of Mrs. Farnsworth. In the next place, when we look at her repeated and elaborate examinations and cross-examinations in this case, we are forced to the conviction that she was entirely competent to execute the papers involved in this case, as she shows very considerable intelligence. In the third place, the evidence of Dr. Thomas, who as notary took her acknowledgment to that deed, is emphatic and decided that she was entirely competent, and that he read and explained it to her, and that she said she understood it. His evidence is not only controlling, because it goes to the competency of the grantor at the material and critical time of execution, and is therefore entitled to peculiar weight (44 W. Va. 612, 36 S. E. 201), but also because he is a physician of eighteen years' practice, a graduate of the Louisville Medical College, and had taken a course at Bellevue Medical College, New York, and had devoted special study as to insanity and mental disease. He knew her personally, and never discovered signs of incompetency. It is very clear

that the theory of mental incompetency to overthrow said deed cannot be sustained.

Next, as to fraud, importunity, and undue influence. There is absolutely nothing adequate to sustain this charge as to this deed. The evidence of the plaintiff herself will not. The evidence of fraud to set aside a deed must be strong and convincing. *Whittaker* v. *Improvement Co.*, 34 W. Va. 217, (12 S. E. 507.) The evidence of undue influence must be so strong that it shows that the party had no free will, and that it destroyed free agency and substituted the will of another for that of the party acting. *Delaplain* v. *Grubb*, 44 W. Va. 612 (30 S. E. 201). Mrs. Farnsworth was the owner of this farm. She had not a soul to manage it. How could she do so? She had not a soul in the house with her. How could she endure the loneliness and desolation through the nights and days and months and years of the aging period of her life? Could she even make a living upon the farm? Though she might get a tenant, he would be a stranger to her, and not give the comfort arising from acquaintance and relationship. Under these trying circumstances, this lady tried to effect an arrangement with a nephew, McCallister, to get him to come and live upon the farm, exactly on what terms does not clearly appear; and, failing in this, she applied to another nephew, the defendant, Noffsinger, for relief. He was the railroad and express agent at Red House, where he owned his own home, and earned a certain living of five hundred and fifty dollars a year as agent. He had a wife and two children. His aunt certainly importuned him to make some arrangement with her. It is by no means proven that he importuned or even first suggested any arrangement with her, or pursued the object after she suggested it. She says she called several times at his railroad office to see him about it. She says, now, that he told her that she was to have all the personal property, and that there was an article which would render the deed void if he did not live up to it. But there was the deed to speak for itself, telling a different tale. She must have gone by it. Noffsinger says he handed it to her, and that she had it two weeks, before she acknowledged it, for examination and advice. She admits that he handed it to her in the yard while moving, and that she had it several days before she executed it. She complains that he told her that, if it was not executed, he

would not finish moving. This is the only item of undue influence she states. This is no undue influence; for, as their agreement was for such deed, he had a perfect right to say that he would not complete his removal unless his rights under the contract were secured. The fact, as she admits, that she had the deed two or three days before she executed it, shows that he did not stop his removal and compel her to make the deed. Thus she had the paper some days for inspection. She says she can read, and that she did read the deed, but did not understand it. When she went to Dr. Thomas to acknowledge it, he read and explained it, and she told him that she had been to a lawyer, and that he had explained it to her; and can a court then say that she did not know the plain provision conveying the stock on the farm and other personalty just as well as she knew that it conveyed the land? If she had not business judgment, that would not set aside the deed; for, as stated in *Buckey* v. *Buckey*, 38 W. Va. 173 (18 S. E. 383,) the principle is sound that, in the absence of fraud undue influence, or imposition, mere weakness or feebleness of understanding is not sufficient to overthrow a party's deed. Mrs. Farnsworth's understanding was not weak or feeble. She does not specify or show any other ground for the charge of fraud. When a witness on the stand, after saying that she never claimed to be insane or crazy, she was definitely asked the question whether, at the various times she visited the office of Noffsinger to contract with him before the deed, he practiced any fraud upon her, she answered, "I don't know; I don't remember." When again asked, "Did he use any fraud or undue influence in regard to the original contract or deed of 31st of October, 1889? and, if so, state fully what it was,"—her answer was, "I don't remember anything." Under all the evidence, the charge of fraud and undue influence is not sustained; but other circumstances (or, rather, considerations) repel the idea of these wrongs, and tell us that this arrangement, whether then wise and prudent, or not, or turning out badly afterwards, was the reflex of her best judgment for her future comfort and happiness. This nephew had been an especial favorite of hers. Why might she not reasonably let him have the farm after her death? She was childless. If it gave her maintenance and support for life, and took from her the burden of management, and gave her home

and family companionship, what better should she want? If that deed had provided for her clothing and medical attention, it would be a very prudent arrangement for her, under the circumstances, however dangerous such arrangements usually are, as experience shows; but people do make them. The charge that, while this deed was in full force, Noffsinger did not execute it, is not sustained. Mrs. Farnsworth herself does not prove it. There is a little evidence of disagreement between her and Mrs. Noffsinger, but of very trifling import, and manifested upon one occasion only, in the slight matter of the ownership of a washtub. So, the charge of bad treatment is not sustained. Thus matters stand as to the said deed.

Now we come to the written agreement of the 3rd of August, 1891. From some cause Mrs. Farnsworth became dissatisfied. As is frequently the case, one house became too small for two families. Discontent sprang up. At her request this subsequent agreement was signed by both. It is said to work injustice and hardship upon Mrs. Farnsworth, because it leases the farm to her for her life, releases her nephew from the obligations imposed upon him by the deed, makes her pay him rent, and leaves him the personal property conveyed by the deed and the remainder in fee in the land. At first blush it does seem a hard bargain. The deed I do not regard to be a hard and unequal bargain; but I cannot say the same as to this agreement. A hard bargain it may be; but here we encounter solid legal principles, essential to the capacity to make contracts and of the rights of parties under them. "Where the legal capacity of the grantor to make a deed is shown, and there is no fraud or undue influence established, he has the legal right to make an unjust, unnatural, or unreasonable conveyance of his property." *Hale* v. *Cole*, 31 W. Va. 576 (8 S. E. 516). If there is no fraud or undue influence, and the party has sufficient understanding to comprehend the business and consents freely to the special matter, the act cannot be impeached, "however unreasonable, imprudent, or unaccountable it may seem to others." *Jarrett* v. *Jarrett*, 11 W. Va. 584. But before we brand this contract as hard upon Mrs. Farnsworth, we must look at Noffsinger's side of it. Having the advantage of the deed, having a home on the land, having commenced operations there, having given up his home at Red House, and his position, which would

likely have been permanent, as railroad agent with its salary of five hundred dollars or six hundred dollars, he is asked by his aunt to give up his home during her life, and hunt a new one, and hunt a new occupation. He yielded up the land to her for her life by this new contract. He had to move off. When would he get back to it as a home? How long would she live? If he intended to look to the farm as a home at her death, how uncertain and irregular would be his arrangements in the meantime. He only got the fee after her death, and that was all she wanted, as she told Taylor Shiltz, when he was talking to her, when the negotiations for this new contract were going on. She said she did not care who got the farm after her death. It seemed to be somewhat embroiled in title, under a claim by her husband's children by a former wife. To whom could she more properly give the remainder after her death than to this nephew, for whom she had before entertained peculiar affection? Likely her affection had not entirely faded away. As she made this arrangement, we are authorized to say it had not. We may say that her affection gave her nephew this home when she should no longer need it; and, as pertinent to the subject of undue influence, as applicable to both the deed and the contract, the law says that confidence in a grantee, influence acquired by him over a grantor by reason of acts of kindness and attention, and love and affection do not constitute fraud or undue influence, and the fact that the grantee possessed such confidence and influence will not alone vitiate a conveyance. *Hale* v. *Cole*, 31 W. Va. 576, (8 S. E. 516;) *Delaplain* v. *Grubb*, 44 W. Va. 612, (30 S. E. 201.) We must remember, when charging this as a hard bargain, the sacrifices of Noffsinger, and that the arrangement with his aunt may have changed and worsted the plan of his life. I will add that the charge against Noffsinger that he retained the fee and made his aunt pay rent for life is not true, because the true construction of the contract is that it does not release Noffsinger from the annual payment of fifty dollars, required of him by the deed, and that the rent of fifty dollars to be paid by his aunt is a set-off against the other fifty dollars in law, and was so intended by the parties, and Noffsinger so interpreted the contract in his pleadings and evidence, and has barred and estopped himself effectually from claiming both exemption from payment by him of the

fifty dollars payable under the deed to Mrs. Farnsworth, and also payment of fifty dollars rent by her. I will add that, of the personal property mentioned in the deed, the fat cattle never went to Noffsinger, and he yielded two of the horses to her, and, I think, also, a cow. The farm is estimated to be worth five thousand dollars, and the personalty was charged to be worth from eight hundred dollars to one thousand dollars, but was not.

I will close this opinion by saying that there is a considerable amount of evidence on both sides, and that it is in material points conflicting, and the circuit court has passed upon it all, and for that reason alone, besides others above given, this Court is justified in refusing to reverse the decree. The parties must stand where their contracts have placed them, though now Mrs. Farnsworth has changed her mind. I cite the case of *Lipscomb* v. *Love*, 38 W. Va. 546, (18 S. E. 732,) and Judge Dent's opinion on page 548, 38 W. Va., and page 732, 18 S. E., to sustain this holding, and to show the binding force of the party's own deeds and writings, and that this Court has no power to release Mrs. Farnsworth therefrom. I might add, under principles stated in *Whittakr* v. *Improvement Co.*, 34 W. Va. 217, (12 S. E. 507,) that, even if there were fraud and undue influence, the delay of Mrs. Farnsworth from October 31, 1889, to February 24, 1897, would defeat this suit under the doctrine of laches, and I think that second agreement ratified the deed, and estopped her from attacking it. If any fraud, she condoned it. *Dewing* v. *Hutton*, 40 W. Va. 521, (21 S. E. 780.) Decree affirmed.

*Affirmed.*