# CHARLESTON.

WOOLDRIDGE *et als. v.* WOOLDRIDGE *et als.*

Submitted September 9, 1910.    Decided October 24, 1911.

1.  SUNDAY—*Validity of Sunday Contract—Deed.*
    A deed made on Sunday is not for that reason invalid, section 17, chapter 149, Code 1906, providing that "no contract shall be deemed void because it is made on the Sabbath day." (p. 557).

2.  ACKNOWLEDGMENT—*Certificate—Impeachment.*
    The evidence of a Justice of the Peace, who takes and certifies an acknowledgment to a deed, is incompetent so far as it tends to impeach his official act.  (p. 558).

3.  DEEDS—*Validity—Capacity of Grantor—Forgery.*
    A case in which the evidence is held insufficient to invalidate

the deed of a deceased grantor for alleged fraud and forgery, and the mental incompetency of the grantor to make a deed. (p. 558).

Appeal from Circuit Court, McDowell County.

Action by Henry Wooldridge and others against James Wooldridge and others. From a judgment for defendant, plaintiffs appeal.

*Affirmed.*

*D. J. F. Strother* and *M. O. Litz,* for appellant.

*Chapman & Gillespie,* for appellees.

MILLER, JUDGE:

The original bill, which sought partition only of a tract alleged to contain one hundred and forty-three acres, by survey actually containing one hundred and nine acres, was, after answers filed, amended by bringing in, as a new party plaintiff, John D. Peery. The amended bill, adopting the allegations of the original bill, alleged in addition, that subsequent to the bringing of the original suit, November 22, 1905, the plaintiffs in the original bill, or some of them, had sold and conveyed their interests as co-parceners in the land, sought to have partitioned, to said Peery, wherefore the necessity of his presence as plaintiff; that the title bond of February 28, 1887, and the deed of September 7, 1895, purporting to have been made by W. C. Wooldridge and wife to James Wooldridge, pleaded and relied on by said James Wooldridge and Thomas Fisher, his successor in title, in their answers to the original bill, were void and of no effect: First, because the title bond was intended only to secure to James Wooldridge title to the interest already conveyed to him; second, because said deed was a fraud and forgery, and had not vested in said James Wooldridge, nor in his successors in title, any title to said land.

The answers of James Wooldridge and Thomas Fisher to the amended bill, as did their answers to the original bill, deny all material allegations thereof; and the sufficiency of the amended bill was also challenged by demurrer thereto. Besides James Wooldridge and Thomas Fisher, in their answers, plead possession, the statute of limitations, laches on the part of plain-

tiffs, and estoppel by deed and by conduct, barring them of all rights, and precluding them from any relief.

The court below, by decree of February 18, 1909, dismissed the plaintiffs' bill, and they have brought the case here to review that decree for alleged errors therein.

The material facts developed by the pleadings and proofs, and on which the rights of the parties depend, are substantially these: On November 20, 1880, the land in controversy, in consideration of seventy-one dollars and fifty cents, paid, was conveyed by one Shannon, attorney in fact for John H. Divine, to said W. C. Wooldridge and James Wooldridge, his son, jointly. It was on this deed that the plaintiffs in the original bill predicated the allegation that said W. C. Wooldridge died seized and possessed of a half undivided interest in said land, and that they, as children and heirs at law, and co-parceners with the said James Wooldridge, or his grantees, were entitled to a partition thereof.

By the title bond of February 28, 1887, which the amended bill charges was made under a mistaken notion as to the effect of the Shannon deed, W. C. Wooldridge bound himself and his heirs to make James Wooldridge "a general warranty of title to seventy-one and two-thirds acres of land" described as "lying on Long Branch of Big Creek, known as the Wooldridge Mill," when said James Wooldridge should pay him, as provided, in two equal payments, the sum of two hundred dollars, evidenced by the notes or bonds of said James Wooldridge. These notes are proven to have been paid by James Wooldridge long before the date of the deed of September 7, 1895, and it is also proven, beyond controversy, that upon the making of this title bond, James Wooldridge, took possession of the entire tract of land, built and occupied a house upon it, and so remained in possession of the land some fourteen years, until he sold and conveyed it, April 17, 1901, to the McCormicks, the immediate grantors of said Fisher.

The deed of September 7, 1895, in consideration of two hundred dollars, acknowledged to have been paid in hand, grants, bargains, sells and conveys to James Wooldridge, "seventy one and two thirds acres of land," described as "being the same land that W. C. Wooldridge and James Wooldridge bought from

J. H. Shannon." Following the granting clause, the deed also contains this clause, further descriptive of the land- granted: "Which ·W. C. Wooldridge and Mary C. Wooldridge deeds to the said James Wooldridge the parties of the first part, convey all their right, title and·interest in and to that said tract of land which land never was divided between the said parties, the land is situate in McDowell County, State of West Virginia, lying on· Long Branch waters of Big Creek, better known as the James Wooldridge Mill." This deed purports to have been duly acknowledged by the grantors on the day of its date, and duly recorded in McDowell County, October 15, 1895.

Numerous questions are argued by counsel with reference to the validity and legal effect of, and failure to record said title bond, upon the interests of the alleged purchaser, Peery. It is conceded, however, that Peery took whatever interests he acquired by sundry deeds from his co-appellants, subject to the deed of W. C. Wooldridge and wife to James Wooldridge, which being recorded was notice to him of the rights of the grantee and his ·successors in title; so that, if we hold, as did the circuit court, contrary to the contentions of appellants, that that deed is good and valid, and sufficient to pass the title ·to the whole interest of the grantors in said tract, we need not concern ourselves with the questions presented respecting the title bond. Indeed the title bond is not so much relied on by the appellees as evidence of title, as it is on the questions of alleged fraud, forgery and 'want of good faith charged against James Wooldridge in procuring the execution of said deed, and as evidence of the adverse holding of the land from the date thereof. The latter question becomes unimportant, however, if the deed be good.

Several questions are presented as to the validity of the deed. First, it is charged to have been made, executed and acknowledged on a Sunday, and invalid for that reason. The deed purports to have been made and acknowledged on September 7, 1895, a Saturday; but there is conflict in the· evidence as to whether it was in fact made on Sunday, September 8, and post-dated for that reason. The fact is immaterial. At common law judicial acts done on Sunday were invalid; but as to all other acts, not of a judicial nature the common law made no

distinction between Sunday and any other day. 2 Par. on Cont. (9th ed.) 923, and note N. In many states statutes, similar to sections 16 and 17, chapter 149, Code 1906, relating to Sabbath breaking, have been held applicable to deeds and contracts executed on Sunday, and as rendering them void as violative of those statutes. 37 Cyc. 564, and notes; *Love* v. *Wells,* (Ind.) 87 Am. Dec. 375; 2 Par. on Cont. (9th Ed.) 923. But said section 17 of our statute specifically provides that "no contract shall be deemed void because it is made on the Sabbath day."

The fact that the deed was also signed and acknowledged by Mrs. Wooldridge, is not noted. It is not claimed that she was also incapacitated by sickness or otherwise to make a deed, nor that the deed was a forgery as to her.

Another point made against the deed is that it is a forgery, that it was never in fact signed or acknowledged by W. C. Wooldridge, one of the grantors, that at the time the deed was made W. C. Wooldridge was in an unconscious state, about to die, and did not then have mental capacity to make a deed or other contract. This point the court below, on conflicting evidence, decided adversely to the contentions of appellants. We think the evidence, with the corroborating facts and circumstances largely preponderates in favor of appellees. The evidence of James Wooldridge, the grantee, objected to because it respected a transaction with a deceased person, corroborated by the two attesting witnesses, was rendered competent by the previous testimony of some of appellants previously examined in their own behalf, with reference to the same transaction. Section 23, chapter 130, Code 1906.

Appellants rely greatly on the testimony of James S. Brewster, a Justice of the Peace, who not only took and certified the acknowledgments of the grantors, but actually prepared the deed, and who also, years before, prepared the title bond and notes. His evidence is to the effect that W. C. Wooldridge, at the time the deed was made was in an unconscious state, and did not in fact sign or acknowledge the deed. In the mean time two of his sons had married daughters of W. C. Wooldridge, and all are plaintiffs and appellants in this suit. His testimony, that of a public officer, objected to, could not be received to

impeach his official act in taking and certifying the acknowledgments to the deed. *Hockman* v. *McClanahan*, 87 Va. 33; *Harkins* v. *Forsyth*, 11 Leigh 301. G. W. Cyphers, the subscribing witness to the deed, and his wife, also present, swear positively that W. C. Wooldridge, though sick, after the deed was read to him, signed and acknowledged it, remarked at the time, that it should have been attended to sooner. The testimony of Nancy Rose, a sister of deceased, is to the same effect. A most significant fact in connection with the due and proper execution of the deed is, that Jane Brewster, who in her bill charges forgery, admits, that she signed her father's name to the deed, which, if he was incapacitated, as she now swears, would convict her of aiding and abetting, if not actually committing the forgery. The decree below must remain undisturbed so far as this point is concerned.

Another point strongly urged on behalf of appellants, based largely on the testimony of said James S. Brewster, Justice, is, that the title bond and deed were intended simply to sell and convey to James Wooldridge the original interest conveyed to him and his father by Shannon, attorney in fact, in 1880. In view of the terms of the deed, and of all the concurrent and subsequent facts and circumstances this is a most unreasonable and improbable story. The consideration for the Shannon deed was seventy-one dollars and fifty cents, half of which is proven to have been paid by James Wooldridge in a particular way. The deed was made to him and his father jointly. The story of James Brewster is clearly a fabrication, is inconsistent with established facts, and is wholly incredible. The deed which the witness admits he prepared, and to which he added his certificate of acknowledgment, as clearly shown from the clause therein quoted, purported to convey not only seventy-one and two-third acres, just half the number of acres supposed to be in the entire tract, but to make the intention clear, also, "all their right, title and interest in * * * * said tract * * * which * * * * never was divided between the said parties." Moreover, after the death of W. C. Wooldridge, all other lands of the decedent were partitioned between appellants and James Wooldridge. There was then no pretence that the land now in controversy belonged to his estate. Many years elapsed, and it

nas not until long after James Wooldridge had parted with the land and it had come to the appellee, Thomas Fisher, an innocent purchaser, that the present claim thereto was made by appellants to.an interest therein. A fact most inconsistent with appellants' theory is that the consideration for the deed of September 7, 1895, as shown by the title bond and notes, and the evidence of the witnesses, was two hundred dollars, which was more than half the original purchase price paid for. the joint interests of W. C. Wooldridge and James Wooldridge.

These views demand an affirmance of the decree below without reference to any other questions presented for our consideration, and it will be so ordered.

*Affirmed.*