# CHARLESTON.

## M. T. ROBERTS AND J. N. ROBERTS *v.*

## HUNTINGTON DEVELOPMENT & GAS COMPANY.

### Submitted October 4, 1921.   Decided November 1, 1921.

1. ACKNOWLEDGMENT—*To Impeach Acknowledgment of Duly Authorized Officer, the Proof Must be Clear and Controlling Beyond Reasonable Doubt.*

    In order to impeach the certificate of acknowledgment of a duly authorized officer, the proof thereof must be clear, cogent, satisfactory and controlling beyond reasonable doubt.   (p. 391).

2. MINES AND MINERALS—*Instrument Releasing    Minerals and Mineral Rights in Lands Sued for in Ejectment Held a Valid and Binding Quitclaim Deed.*

    An instrument reciting the pendency of certain ejectment suits, and reciting the names of the plaintiffs and defendants therein, and whereby the makers thereof in terms or effect undertake tò release or disclaim to the plaintiffs in those suits and those claiming under them, any right, title, claim or demand to certain minerals and mineral rights in the land sued for in said actions, and describing the land by reference to certain recorded deeds, and duly acknowledged by the makers before a proper officer, sufficiently identifies the grantees, and being made for a valid consideration, is in effect a quitclaim deed, and valid and binding on the grantors, their heirs and assigns.   (p. 391).

3. SAME—*Desire to Settle Conflicting Claims to Land Surface of Which Makers Possessed, Held Sufficient Consideration for Quitclaim Deed to Mineral Rights.*

    The pendency of such ejectment suits, the fact that the makers were in possession of the surface of the land, and desirous of having settled any and all conflicting claims to the land so occupied by them, and to be relieved from all obligation in relation thereto, constitutes a sufficient consideration for the making and execution of such quitclaim deed to such minerals and mineral rights.   (p. 392).

4. SAME—*Technical Words of Legal Import Must Yield to Manifest Intent in Construing Quitclaim Deed.*

    In construing such an instrument effect must always be given to the plain intent of the parties, when such intent can

be ascertained from the instrument, and is not repugnant to any rule of law; and technical words of legal import, when employed, must yield to such manifest intent of the parties. (p. 393).

5. ESTOPPEL—MINES AND MINERALS—*Grantee in Quitclaim Deed Need Not be Described by Name, if Properly Distinguished by Description.*

The fact that in such an instrument the grantee may not be described by name will not affect the validity of the deed, if the designation or description be sufficient to distinguish the person or persons intended from the rest of the world. (p. 393).

6. SAME—*Maker of Quitclaim Deed and His Grantees Estopped to Assert Any Right, Title, or Interest in Land Quitclaimed.*

The maker of such an instrument is estopped by the deed from asserting any right, title or interest in the land so granted or quitclaimed, and being so estopped, those claiming under him are also estopped thereby. (p. 394).

Appeal from Circuit Court, Putnam County.

Bill by M. T. Roberts and another against the Huntington Development & Gas Company.    Decree for plaintiffs, and the defendant appeals.

*Reversed, and bills dismissed.*

*J. S. Clark, Henry A. McCarthy, Vinson, Thompson, Meek & Renshaw* and *Fitzpatrick, Campbell, Brown & Davis,* for appellant.

*Wilkinson & Wilkinson* for appellees.

MILLER, JUDGE:

The object of the present bill was to have removed as a cloud upon plaintiffs' alleged title to two tracts, comprising one hundred and thirty-eight (138) acres of land in Putnam County, alleged to have been acquired by them in the year 1887, by deeds from Margaret Billups, a certain recorded instrument, commonly known as a disclaimer, the pertinent parts of which are as follows:

"Whereas certain actions of ejectment are now pending in the District Court of the United States for the District of West Virginia in favor of Henry McFarlan and others against Lewis Adkins and others, John P.

Yelverton and others against Jeremiah Witcher and others, Gustavus A. Sacchi against James A. Holley and others, Gustavus A. Sacchi against J. M. Reece and others and Gustavus A. Sacchi against A. J. Barrett and others; for the recovery of a certain tract of land heretofore conveyed by Henry McFarlan and others, Trustees of the Guyandotte Land Company, to Gustavus A. Sacchi by deed bearing date on the 27th day of June 1865 and recorded in the office of the Recorder of Cabell County in Book A (new series) page 104; and

"Whereas Charles M. & Dortha D. S. Billups are in possession of and claiming title to a portion of said land so sought to be recovered and are desirous of settling any and all conflicting claims to lands so occupied and claimed by them.

"Now, Therefore the said Charles & Dortha .........., in consideration of the premises and of being released from all litigation in relation to the land hereinafter described and from liability for costs in relation to lands sought to be recovered as aforesaid, do hereby disclaim all right, title claim demand or interest in and to all and any land set out and described in said deed and said declarations in said actions of ejectment except those pieces or parcels of land situate, lying and being in the county of Putnam and State of West Virginia on Big Creek of Trace Fork of Mud and being part of a survey of 200 acres made for Andrew Barrett on the 10th day of May 1838 being 55½ acres situate on the waters of Big Creek of Trace Fork of Mud in Putnam County, West Va., beginning at an ash, (etc.).

"Also that other piece or parcel of land adjoining the above tract beginning at a white oak and two beeches a corner to said survey of 200 acres, thence N. 34° E. 48 poles crossing the creek to a gum and red oak, thence a straight line 159 poles to a beech, thence a south course crossing the creek 35 poles to a beech and dogwood bush, thence a straight line and south east direction to the beginning, containing 35 acres more or less.

"But the ,said Charles and Dortha D. S. Billups hereby disclaim all title to or interest in all coal (except so much as shall be required for domestic purposes) and iron ore, hydro carbon oils, salt brine, natural gas and all other minerals in, upon or under the said tract of land herein excepted with the exclusive right to the said plaintiffs and those claiming under them for rights of way for tram, rail and wagon roads through said land so excepted and to dig for and mine coal, iron ore, bore for oil or natural gas and the necessary conveniences on said land for storing oil and coal and the transmission of the same by the best and most convenient means to market.

"And the said Charles and Dortha ................ further agree that the plaintiffs in either of said actions may take judgment against them in ejectment for the interests by them herein disclaimed and to that end they empower any attorney of said court to appear for them and consent that such judgment be entered and that this disclaimer be filed as a part of the record in such cause.

"Given under our hands and seals this 22nd day of May, 1891.

"C. M. Billups        (Seal)
"Dorthy Billups        (Seal) "

This paper purports to have been acknowledged by both the makers, before Alexander Eggleton,   Notary Public, August 8, 1891, and was recorded in the clerk's office of the county court of Putnam County, March 21, 1893.

Two main grounds are alleged and relied on as the bases for the relief prayed for and decreed to plaintiffs by the decree of July 30, 1920, appealed from.    First, that the instrument in question is a forgery as to Dortha, or Dortha D. S. Billups, and was never executed or acknowledged by her in any form, or by any one with her authority:    Second, that said instrument is not a deed, nor a deed of bargain and sale, operating to pass any title to the minerals and mineral rights described therein.

On the first of these questions, that of the alleged forgery

of the instrument, the record shows that about the time of the alleged execution of the instrument, numerous other deeds or contracts in substantially the same form were executed by other defendants in the several ejectment suits described in the instrument, and either recorded as deeds or carried into judgments in those suits.    The contract involved here does not appear to have been covered by any judgment against the makers.    Mrs. Billups is not shown to have been a party to any of those ejectment suits, but Charles M. Billups, her husband, was, who along with his wife was then in possession of the land.    The notary public  before whom the acknowledgment was taken, now deceased, was a near neighbor of the Billupses, and passed and repassed their place almost every day, so they testify.    He had no interest in any way in the subject matter of the alleged instrument. Charles M. Billups admits the execution of the instrument on his part, and as to him there is no question of forgery presented, but the title to the land was not in him, but in his wife, Dortha D. S. Billups.    Mrs. Billups, the evidence shows, could neither read nor write.    Her name was signed to the paper as Dorothy Billups, but the certificate of acknowledgment contains her full name, Dortha D. S. Billups, and identifies her as the same person whose name is signed to the instrument.    The instrument is dated May 22, 1891, but does not purport to have been acknowledged until August 8th following, which is a significant fact taken in connection with the other evidence.    This suit was instituted, not by the Billupses, but by plaintiffs, near  relatives,  and remote grantees, in October, 1916, more than twenty-three years after the recording of the paper in Putnam County, and more than twenty-five years after the date of  acknowledgment thereof.    Such is the record evidence of the making and executing of the instrument.    .

We next turn to the oral evidence of the witnesses relied on to support the decree.    We have first the testimony of C. M. Billups.    He admits he signed and acknowledged the contract on his part before Eggleton, Notary.    He says he did this after being threatened with prosecution for cutting timber belonging to plaintiffs in the ejectment suit over the

line claimed by his wife.    This fact is unimportant on the question of forgery of his wife's name.    As to her signing and acknowledging the paper he says that he had no recollection of his wife having signed and acknowledged the disclaimer, and as to her refusal at any time, he says: "I can only state just what I know and what I am positive.    It strikes me like she did in the first place kind of kicked, but whether she-finally signed it I couldn't tell for my life.    I have no recollection,—my recollection is kindly bad."    Of course as Mrs. Billups could not write, some one who could would have to sign her name for her, and that she may not have signed her name or made her mark is not a very significant fact.    When pressed with the question: "Why did you disclaim your wife's mineral?", Billups answered: "I suppose I was always doing business for her was the reason I done it; I don't know what else.    Of course I always done business just the same as for myself and was bound up and could not get out of it any way, and of course there had to be something done, or big trouble."    That Mrs. Billups in the beginning may have objected to executing the paper, as her husband swears, is in keeping with the evidence of all the other witnesses for plaintiff, unless it be that of Mrs. Billups herself, who swears that she did not execute it or authorize the execution thereof by any one else.    As observed, nearly three months elapsed between the date of the instrument, when Billups may have signed it, and when Mrs. Billups may have refused to do so, as Billups says, when she "kind of kicked," and the date of the acknowledgment, when according to Billups and other witnesses, she may have relented and actually authorized her husband or some one else to sign the contract, and herself acknowledged it before the notary public.    His certificate, a quasi judicial act, so certifies at all events.

The testimony of two other witnesses, namely, Victoria Cottrell, a daughter of Mr. and Mrs. Billups, and W. M. Ashworth, at the date of the instrument in the employ of E. L. Butterick, who appears to have been attorney for the plaintiffs in the ejectment suits, is relied on.    The pertinent part of Mrs. Cottrell's testimony is that she remembers that about

the year 1891, her father was in trouble about cutting timber on what was known as the company's land, and she recalled that Ashworth and Eggleton were at her father's house for the purpose of getting her father and mother to sign a paper writing or deed of disclaimer of the minerals under the land owned by her mother; that her father had signed such writing, but her mother had not.   And as to what was said on that occasion she says:   ''Of course it has been some time, you know, and I don't remember more than this, she made this remark that she would die before she would sign it.''   She further testified that she did not know of Eggleton being back at her father's house at any other time when he signed and acknowledged the paper.   She could not be positive that she was at home all the time from May 22,. 1891, to August 8, 1891, and that she did not know of Mr. Eggleton going back to her home to see her mother about the disclaimer after her father had signed it.   She was finally asked:   ''Could he (referring to Eggleton) have come when you were away from home?''   Answer:   ''Yes, he could have come.''   She could not remember the date or season of the year when he was present with Ashworth to secure the paper, so that her evidence is not inconsistent with defendant's theory, based largely on the testimony of other witnesses and the difference between the date of the deed and the date of the acknowledgment, that Mrs. Billups, though objecting in the beginning, afterwards consented, and the instrument was signed on her behalf by some one, and   she acknowledged it before Eggleton.

The strongest evidence perhaps in support of plaintiff's case is that of Ashworth, representing Butterick, attorney for plaintiffs in the ejectment suits.   He acknowledges that Mrs. Billups objected, and refused to sign the instrument; said she never would.   But on cross-examination Ashworth says his understanding is that there was only one paper to be executed at the time he was present, but would not be positive about that.   And he says that if Mrs. Billups on another day, after her husband had acknowledged it, also acknowledged it, he knows nothing about it.   And when shown another disclaimer deed like the one involved here

and purporting to bear the same date and to have been    acknowledged on the same day before Eggleton, Notary Public, he could not say which one of the two instruments it was that Mrs. Billups refused to sign or acknowledge.    The only other witnesses examined on the subject of forgery were Spurlock, Sponagle, Linkous and the plaintiffs, all of whose testimony on this proposition was hearsay and wholly incompetent.    It related to what others had told them after the transaction.

Are these facts and circumstances and the testimony of these witnesses sufficient to overthrow and brand as a forgery a solemn deed or instrument, twenty-five years after it purports to have been executed before a public officer?    If so, there is little safety in the titles to land.    The treachery of memories, and the cupidity and averice of former owners and claimants of the land would be sufficient to overthrow deeds and other instruments.    The rule of law laid down in this state, as elsewhere, is that in order to impeach the certificate of acknowledgment of a duly authorized officer, the proof must be clear, cogent, satisfactory and convincing beyond reasonable doubt or controversy.    *Pickens* v. *Knisely,* 29 W. Va. 1; *Swiger* v. *Swiger,* 58 W. Va. 119; *Hill* v. *Horse Creek Coal Land Co.,* 70 W. Va. 221; *Mankin* v. *Davis,* 82 W. Va. 757, 763.    It was decided in the Swiger case that the evidence of the grantor denying the execution of the deed, and the opinion of the experts that the signature thereto was not that of the grantor, was not sufficient to overthrow the verity of the certificate of acknowledgment.    And in *Hill* v. *Horse Creek Coal Land Co., supra,* it was decided that the denial of the execution of a deed and acknowledgment thereof, unaided otherwise than by the fact that the signature was by mark, and the party could write, and denied having signed any paper, was not sufficient to overcome a certificate of acknowledgment thirty years old, and pronounced genuine by the officer who certified the acknowledgment.    See also, *Houlihan* v. *Morrissey,* (Ill.); Ann. Cas. 1917A, 364 and note; *People's Gas Co.* v. *Fletcher,* (Kan.), 41 L. R. A. (N. S.) 1161 and note; 1 C. J. p. 896, and note 60.

The remaining question is as to the adequacy of the instru-

ment to pass title to the minerals and mineral rights disclaimed. It is apparent from the language of the instrument that the makers thereof intended to release or disclaim to the plaintiffs in the several ejectment suits referred to and those claiming under them any right, title, claim or demand to the land sued for in said action, being the land theretofore conveyed by Henry McFarland and others, trustees of the Guyandotte Land Company, to Gustavus A. Sacchi, by deed of June 27, 1865, and recorded in Cabell County, in Deed Book A (New Series) page 104, except the tract described as containing 55½ acres, and a tract of 35 acres also described therein; and as to the tracts so excepted to also disclaim all title to or interest in all coal (except so much as shall be required for domestic purposes) and iron ore, hydrocarbon oils, salt brine, natural gas and other minerals in, upon or under the said tract of land therein excepted, with the exclusive right to said plaintiffs and those claiming under them for right of way for tram, rail or wagon roads through said land so excepted, and to dig for and mine coal, iron ore, bore for oil and natural gas etc. The instrument so states its purpose. The plaintiffs were well known or easily ascertainable, and there can be no question as to the parties to the instrument nor the subject matter or matters of the disclaimer.

The consideration for this disclaimer was, as the instrument recites on its face, the pendency of the suits, the fact that the makers were in possession of the lands sued for, their desire to have settled any and all conflicting claims to the lands so occupied by them, and to be relieved from all litigation in relation thereto, and from liability for costs. Certainly these were sufficient considerations for the deed or instrument of disclaimer. It is conceded that if this instrument was genuine, and had been filed in the ejectment suits, and judgment taken in favor of the plaintiffs therein, such judgment would have worked a complete estoppel as to claimants or any one holding under them; but the contention of counsel is that this was not done; that no judgment was taken; and the paper not being in form a deed, and containing no words of bargain or sale, or of grant or other operative words, there is no manifest intent in the instrument to pass any title.

We need not travel outside of our own decisions for a statement of the well settled rules of construction, namely, that effect must be given to the intent of the parties to an instrument, when it is plainly and clearly expressed, or can be settled or ascertained from the instrument, and is not repugnant to any rule of law, and that technical words or form of the instrument are not essential to the validity or effectiveness of the instrument, where the intent is so manifested; and that technical words of legal import, where employed, must always yield to such manifest intent of the parties.     *Parsons* v. *Balto. B. & L. Ass'n.*, 44 W. Va. 335; *Crookshanks* v. *Ransbarger*, 80 W. Va. 21; 18 Corpus Juris, p. 170; *American Emigrant Company* v. *Clark*, (Iowa), 17 N. W. 483.     In the recent case of *T. J. Woodall* v. *Clark et al, Trustees,* 254 Fed. Rep. 526, the Circuit Court of Appeals for this circuit, affirming Judge Keller, of the district court, held the instrument there involved, practically the same as the one we have under consideration here, to be in effect a quitclaim deed. And again, in *Estabrook et al* v. *Miller,* 273 Fed. Rep. 143, the same court held a like instrument to be in effect a quitclaim deed. And when we read and consider the whole instrument and all its parts, as we are reminded by counsel that we must, there is nothing to be found there to manifest any intent other than to quitclaim to the plaintiffs in the pending ejectment suits all right, title and interest in and to all coal, (except etc.), and iron ore, hydrocarbon oils, salt brine, natural gas and all other minerals in, upon and under said tracts of land, with the exclusive right etc., as there described.     These were interests severable from the rest of the land, and as held in *Freudenberger Oil Co.* v. *Simmons et al.,* 75 W. Va. 337, were the proper subjects of grant or exceptions in a deed.

It is contended, however, that there are no grantees named in the instrument, and that for this reason the instrument lacks an essential element in order to pass title.     But this argument was met and decided adversely to the contention of counsel in the two federal cases cited.     It is true, the persons to whom the disclaimers were made are not specifically named in that part of the instrument, but the plaintiffs in the

ejectment suits are named or recited in the previous part thereof; and the rights and interests disclaimed, are, by the very language of the instrument, "with the exclusive right to the said plaintiffs and those claiming under them for rights of way for tram, rail and wagon roads through said lands so excepted." These words taken in connection with those following, providing that, "plaintiffs in either of said actions may take judgment against them in ejectment for the interests by them herein disclaimed" etc., removed all doubt as to the grantees intended, and sufficiently describes them. In 1 Devlin on Deeds, section 184, it is said: "The fact that a grantee is not described by name will not affect the validity of a deed, if the designation or description be sufficient to distinguish the person intended from the rest of the world." On this subject we also refer to *American Emigrant Company* v. *Clark, supra.*

The argument is also advanced that the instrument is executory only, and not having been carried into judgment, as the plaintiffs were authorized to do, the title never passed. That was the right of plaintiffs in the ejectment suits; but as to the defendants nothing remained to be done on their part. As to them the instrument was fully executed. And being executed under seal, and delivered, the grantors were thereby forever estopped by the deed from asserting any right, title or interest in the several interests in the land so granted or quitclaimed. One may be estopped to deny the truth of facts agreed upon and settled by force of entering into the contract, and arising from acts done under or in performance thereof. 21 Corpus Juris, 1110; *Headley* v. *Hoopengarner,* 60 W. Va. 626. In *Dickerson* v. *Colgrove,* 100 U. S. 578, an owner of land was held to be estopped as against a purchaser by a letter which he wrote to the vendor and which was shown to the purchaser. And in *Summerfield* v. *White,* 54 W. Va. 311, it was distinctly held that one claiming under another so bound by an estoppel is himself bound thereby. In this case the plaintiffs are bound thereby, if not by actual knowledge, by force of the recorded instrument. Section 11, chapter 72 of the Code provides: "And all deeds heretofore made, whether by officers, agents, com-

missioners, or individuals, shall be valid and effectual, and bind the parties thereto, and the persons whose estates and interests are thereby conveyed, notwithstanding any defects, or informality therein, in the same manner and to the same extent, as if the same had been in due and legal form, if it sufficiently appears by the contents of the deed what is intended.'' Having held the instrument sufficiently formal, and indicating the interests of the parties, it was a recordable instrument, and being recorded was notice to the plaintiffs as purchasers, of the rights of appellant.

Our conclusion, therefore, is to reverse the decree, and to dismiss plaintiffs' bill and amended and supplemental bills, and that appellant recover of the plaintiffs its costs here incurred and in the court below, and it will be so ordered.

<em>Reversed, and bills dismissed.</em>