LYDIA JORDAN, *etc.*

*v.*

GEORGIA COUSINS

(No. 9729)

Submitted January 12, 1946.   Decided March 19, 1946.

*John A. Lile,* for appellant.
*Nickell Kramer,* for appellee.

KENNA, PRESIDENT:

This proceeding was brought in the Circuit Court of Greenbrier County by Lydia Seams Jordan against Georgia Cousins for the purpose of setting aside a deed executed by Alex Crawford, a colored man about eighty years old, dated the 1st day of June, 1943, and conveying

to Georgia Cousins a house and lot in the town of White Sulphur Springs, the bill of complaint alleging that on the date the deed was signed by Crawford and the date borne by the certificate of acknowledgment, June 4, 1943, the grantor was mentally incompetent and subject to the undue influence of the grantee, Georgia Cousins. Upon final hearing the bill of complaint was dismissed and this appeal was later granted upon the application of the complainant below.

Lydia Jordan is the stepdaughter of Alex Crawford and sole beneficiary of a will executed by him in 1939. Georgia Cousins received practically all of Crawford's property by virtue of the deed under attack, the effect of which, if valid, is to practically nullify the effect of the Crawford will. Hence this controversy.

There is no controversy concerning the factual background. Crawford married plaintiff's mother in 1904, when plaintiff was about twelve years old. Several years later the plaintiff married and for a time she and her husband lived in the Crawford home . In 1917 plaintiff's husband built on a lot adjoining the Crawford property, where plaintiff apparently still lives. The mother of plaintiff died in 1938 and in 1939 Crawford suffered a heart attack, following which he executed a will naming the plaintiff as sole beneficiary, the will describing the testator's condition as being then almost helpless, although there is testimony that he continued to report for work at the Greenbrier Hotel where he was employed. Between the execution of the will and 1941 Crawford suffered two strokes of apoplexy and was operated upon for a navel rupture. In the fall of 1941 Dr. W. E. Myles, of White Sulphur Springs, treated Crawford over a period of approximately ninety days for diabetes, which affected his mental condition but which was improving at the end of the treatment. On June 1, 1943, Crawford went to Lewisburg in the automobile of Georgia Cousins accompanied by her and her sister, and consulted Mr. C. N. McWhorter, an attorney at law, Georgia Cousins going

to Mr. McWhorter's office while Crawford and her sister sat in the automobile in the street below. Georgia Cousins told Mr. McWhorter that she understood that possibly Crawford had disposed of his real estate but that if not he wished to convey it to her. Mr. McWhorter and she went to the County Clerk's office where he, having first ascertained by an examination of the record that Crawford had not disposed of his real property, procured a description of the property that he thought Crawford wished to convey. They then returned to the automobile where Crawford told the attorney that he wanted to make a deed to Georgia Cousins because she was taking care of him. Mr. McWhorter testified that Crawford at that time was quite old and feeble and that therefore he questioned him rather closely in order to be certain, if possible, of his capacity and that having concluded that Crawford was capable he drafted the deed basing the consideration upon support, maintenance and burial expenses. After the deed was prepared Mr. McWhorter mailed it, not to Crawford but to Georgia Cousins, and three days later, or on June 4, Crawford again went to Lewisburg in the car of Georgia Cousins to see Carl Burr, notary public, in whose presence the deed was signed and who signed the certificate of acknowledgment after asking Crawford if he knew what he was signing and receiving Georgia Cousins' assurance that he did. On June 24 pursuant to the execution of a lunacy warrant procured by Lydia Jordan the Mental Hygiene Commission of Greenbrier County found Crawford a mental defective, the order providing that he could be cared for at his home. On July 12 Crawford died. Dr. Lawless, who attended him at the time of his death, left Greenbrier County and was not available for the purpose of testifying in this case.

The question at issue of course is Crawford's mental capacity at the time he executed the instrument under attack. *Delaplain, et al. v. Grubb, et al.*, 44 W. Va. 612, 30 S. E. 201; *Farnsworth v. Noffsinger*, 46 W. Va. 410, 33 S. E. 246; *Woodville v. Woodville*, 63 W. Va. 286, 60

S. E. 140; *Martin v. Moore,* 92 W. Va. 671, 115 S. E. 833; *J. S. Doak, Admr. of Charles Doak v. Victoria E. Smith,* 93 W. Va. 133, 116 S. E. 691; *Wade v. Sayre,* 96 W. Va. 364, 123 S. E. 59. His capacity at that time is rebuttably presumed. *Delaplain, et al. v. Grubb, et al.,* 44 W. Va. 612, 30 S. E. 201; *Farnsworth v. Noffsinger,* 46 W. Va. 410, 33 S. E. 246; *Martin v. Moore,* 92 W. Va. 671, 115 S. E. 833; *Black v. Post,* 67 W. Va. 253, 67 S. E. 1072; *White v. Mooney,* 73 W. Va. 304, 80 S. E. 844; *Carrigan, Committee v. Davis,* 84 W. Va. 473, 100 S. E. 91. Speaking strictly, if delivery is looked upon as an element of execution, there is no testimony that definitely fixes the time of execution, because none of the witnesses who were present when the paper and certificate of acknowledgment were signed, states that it was then delivered to Cousins. Crawford paid the recording fee. The recording receipt was not produced although Cousins says she sent it to the County Clerk's Office.

As far as lay testimony on the question of capacity is concerned the weight is about balanced, both the complainant and the defendant testfying and using five or six neighbors and acquaintances of Crawford whose views conflict on practically all material questions, some saying that they knew from his statements to them that he wished to leave his property to Lydia Jordan and others that he wished Georgia Cousins to have it.

There was no objection to the testimony of Lydia Jordan concerning the mental capacity of Crawford, Jordan being interested in the outcome of this suit affecting the estate of the deceased, concerning whose capacity her opinion is based upon personal communication and therefore her testimony is inadmissible. *Freeman v. Freeman,* 71 W. Va. 303, 308, 76 S. E. 657. However, Georgia Cousins testified along the same line, thereby waiving the possible objection to testimony of the plaintiff. *Curtis v. Curtis,* 85 W. Va. 37, 40, 100 S. E. 856.

Mr. C. N. McWhorter who drafted the deed and saw Crawford three days before it was signed states that at

that time in his opinion, although weak and feeble, Crawford was competent and that Crawford gave him general information concerning what he wanted done. If the record stopped there without question the trial chancellor's dismissal of the bill of complaint would be justified. But there are other salient features to which we do not believe the chancellor's finding attaches sufficient importance. McWhorter's testimony did not directly relate to the grantor's condition when the deed was actually signed. The grantee's of course did, but in addition to her material interest her statement is weakened, we believe, by the fact that she stated that Crawford's mental condition in June, 1943, was the same as it was in 1939 when he had executed his will naming Lydia Jordan as sole beneficiary. In the intervening years Crawford had suffered two strokes and an acute attack of diabetes, temporarily, at least, affecting his mind, and had become four years older in his early eighties. The other defendant's witness present was Cousins' sister who testified but was not asked on either direct or cross-examination concerning the circumstances under which the deed was executed. The only other person present when the deed was acknowledged was the notary public and under the controlling principle, particularly under the circumstances of this case, his statement is entitled to peculiar weight.

Carl Burr, the notary public who took Crawford's acknowledgment to the deed under attack may be said to be the plaintiff's leading witness. His testimony was objected to by counsel for the defendant on the ground that the certificate of a notary public speaks for itself at least to prevent a notary from attempting to impeach his own certification. It is now settled in this State that a notary public in taking and certifying an acknowledgment is acting in a quasi-judicial capacity and that he cannot be heard in a collateral proceeding to impeach his official act, but that in a direct proceeding to set aside the instrument acknowledged, if the notary was imposed upon he may be heard. *Mankin v. Davis*, 82 W. Va. 757,

97 S. E. 296. The case just cited overcomes in part the former ruling of this court in *Wooldridge v. Wooldridge,* 69 W. Va. 554, 72 S. E. 654, which definitely holds that a justice of the peace cannot be heard under any circumstances to impeach his certification of an acknowledgment. Undoubtedly in order to successfully impeach a certificate of acknowledgment the testimony of its invalidity must be quite clear and controlling. *Roberts v. Gas Company,* 89 W. Va. 384, 109 S. E. 348. Apparently notaries public have always been permitted to testify concerning facts which tend to uphold the validity of their certificate and which are stated in their certificate by unavoidable implication.

A notary may be called to testify to the competency of a person who acknowledged an instrument because his certificate by necessary implication states that the person acknowledging is competent to do so, but not his incompetency in contradiction of his certificate in the absence of imposition. *Buckey v. Buckey,* 38 W. Va. 168, 175, 18 S. E. 383. In the pending case the notary was told that Crawford wished to acknowledge or have him "notarize" the paper. He was not told that the paper was a deed. He had not seen Crawford for some time and was unfamiliar with his physical and mental condition at the time the paper was signed in his presence. He states that upon seeing Crawford he became dubious and asked him directly if he knew what he was signing. Crawford did not reply but turned to Georgia Cousins sitting beside him, who stated that they were the same papers that they had talked over. Then Crawford signed and the notary certified, plainly depending upon the implied assurance of Georgia Cousins concerning Crawford's capacity. Within twenty days Crawford was officially declared incompetent. This occurred while he was living at the home of Georgia Cousins and at a hearing of which she says she knew nothing. Under these circumstances, while it is true that the notary public probably did not exercise the caution that it developed the circumstances demanded, the fact that he was of-

ficially imposed upon is quite apparent and therefore his testimony, even to the extent. of impeaching his own certificate, can be heard.

·The testimony of the notary public, as stated, is that in his judgment Alex Crawford was not at himself and was "froze". Before then Crawford had suffered a heart attack, two cerebral hemorrhages, and an attack of diabetes that impaired his mental capacity to a noticeable degree. The importance of the testimony of a notary public is his supposed experience and impartiality. Here the other witnesses present at the actual execution of the deed were personally interested in upholding its validity. That fact robs their testimony of the peculiar weight to which that of the notary is entitled. *Buckey v. Buckey*, 38 W. Va. 168, 175, 18 S. E. 383; *Burkle v. Abraham*, 112 W. Va. 257, 164 S. E. 150.

This case does not involve the right of an innocent purchaser for value. If it did the governing principles would be quite different. Georgia Cousins was directly concerned with, and fully informed as to, the mental condition of Alex Crawford. It is true that she has discharged the actual consideration of support and maintenance and the payment of burial expenses as recited in the deed. For that she has a right to fair reimbursement and the complainant is bound by the offer to reimburse contained in her bill of complaint.

In addition to the testimony of the notary public directly bearing upon Crawford's mental condition at the time of the deed's signing and acknowledgment there are other features that we believe alone at least counterbalance the circumstantial evidence of the defendant. The finding of the Mental Hygiene Commission, declaring Alex Crawford incompetent, after a hearing and after separate examinations by two reputable physicians, even though twenty days after the execution of the deed in question, in our opinion is of consequence. Then there is the testimony of Dr. W. E. Myles, who had known Crawford for years and had treated him during his at-

tack of diabetes in the fall of 1941. Crawford failed to recognize him at the hearing. Dr. Myles testified that in his opinion Crawford was incompetent at the time the deed was executed. The finding of the Commission and Dr. Myles' opinion based upon the background of two strokes of paralysis suffered during the last two or three years of his life, and the fact that he had an extremely severe attack of diabetes in the fall of 1941, coupled with the testimony of the notary public, we believe make it comparatively clear that the testimony on behalf of the complainant plainly predominates, and therefore that the decree of the Circuit Court of Greenbrier County must be reversed.

*Reversed and remanded.*