CURTIS YOUNG, *et al.*

*v.*

LUCY A. YOUNG, *et al.*

(No. 10579)

Submitted January 19, 1954.    Decided February 16, 1954.

*Carl L. Davis,* for appellants.

*F. B. Shannon, E. Glenn Robinson,* for appellees.

GIVEN, PRESIDENT:

Plaintiffs, Curtis Young and Mary Young Ferrell, instituted this chancery cause in the Circuit Court of Kanawha County, against Lucy A. Young, Grover Lee Young, Glenn Roscoe Young and Bevel Young, for the purpose of having declared void a deed executed by M. L. Young direct to his wife, the defendant, Lucy A. Young, on the 15th day of November, 1949. The plaintiffs and the defendant Bevel Young are children of M. L. Young by his first wife, and the defendants Grover Lee Young and Glenn Roscoe Young are children of M. L. Young and Lucy A. Young, the third wife of M. L. Young. The grounds upon which the deed was attacked, as disclosed by the bill of complaint, were that it was made "without any consideration"; that Lucy A. Young procured the execution of the deed "though the corrupt, fraudulent and dishonest practice aforesaid by which the will and intent of the said M. L. Young was, by the said Lucy A. Young, wholly overpowered and controlled"; and that the deed was not executed by M. L. Young "of his own volition and by his own free agency but that at the said time, said M. L. Young was sick of mind and body, enfeebled and incapable of exercising any sound judgment because of said enfeebled condition." M. L. Young died, intestate, December 27, 1950.

The trial court directed that an issue be tried before a jury "to ascertain whether M. L. Young, deceased, was of sound mind and possessed of sufficient mental facilities to execute" the deed and "whether or not undue influence

was asserted upon said M. L. Young and fraudulent means exercised upon him to execute said deed aforesaid, and whether or not the execution of said deed was of his free will or otherwise." Upon the trial of the issue the jury returned a verdict for the plaintiffs, which was set aside by the trial chancellor, who made independent findings, favorable to the defendants, and dismissed the bill of complaint.

Plaintiffs produced several witnesses who testified as to the mental capacity of the grantor. Only two of these, Doctor Arthur C. Litton and Thelma L. Judy, gave testimony which seems of importance. Doctor Litton testified that he treated M. L. Young from about November, 1945, to the time of his death. Apparently the visit of Doctor Litton closest in point of time to the date of the execution of the deed was on November 4, 1949. Doctor Litton further testified that he had treated Mr. Young for "arteriosclerosis, or hardening of the arteries. He also had a cold, influenza and trouble with his bladder, with his prostate gland, and he also had pneumonia." At the time of the visit of November 4, 1949, Mr. Young "was suffering then from periods of arteriosclerotic insanity; that is, in such conditions the mind comes and goes due to the fact that the brain does not get the proper blood supply at times because of the hardening of the arteries, and also he was suffering from his prostate gland at that time and also from influenza at that time." In answer to a question propounded by the court, Doctor Litton testified: "* * * A man in that state is easily led because at times he is not capable of knowing exactly what he is doing and he will follow suggestions in the way of answering questions or doing things. If you say do something he generally does it, and as a rule he could have been led to sign the deed when he didn't know what he was doing, although I am not saying he did that, because I was not there that day, but they are more easily led than a normal individual because they don't think things out for themselves."

Thelma L. Judy, as notary public, certified to the acknowledgment of the grantor. Apparently the notary,

who resided in Charleston, about ten miles from the Young home, had been requested by Mrs. Young, or one of her children by M. L. Young, to come to the Young home for the purpose of taking the acknowledgment. Mrs. Judy testified to the effect that she and her husband, who died before the trial, drove to the Young home between seven and eight o'clock of the evening on which the deed was executed; that the deed was read an executed within "not more than five minutes, perhaps not that long" after she entered the home; and that Mrs. Young handed her the deed as soon as she entered the home and requested her to proceed with the taking of the acknowledgment immediately so that Mr. Young could be put back into bed. When asked to detail what happened upon entering the house, she testified:

"Well, I went to the house. Mr. Young was sitting at a table. Mrs. Young had the deed and said Mr. Young was very tired and to go ahead and acknowledge the deed so she could put him back to bed. I did. I went over and read the deed to Mr. Young. I asked him if he understood it and he did not make me any answer. I said to Mr. Young, I said, 'You are a very sick man.' He did not make me any answer. So I laid the deed down on the table, he started to sign it and he was just so nervous he could not and I steadied his hand with the pen while he signed the deed. As soon as the deed was signed I gave the deed back to Mrs. Young. She put it away. She came back and put him to bed. I sat there where I was. Mrs. Young then went back up to the fire and sat down after she put Mr. Young in bed, and she was talking and, of course, I was talking and my husband was talking and one of the boys, and Mr. Young started talking. I don't remember what it was but it did not make any sense whatsoever. None. He did not seem to be talking to me. He was not talking to anyone, he was just talking and he did not make any two sentences with any connection between the two sentences, and that is all I know.

"Of course, when I started out I asked my husband if he heard what Mr. Young said. He said, 'No, I was busy

talking to so and so,' and I said to him, 'You know his mind is bad.' I made that remark going out the kitchen door. I don't just remember what it was now that Mr. Young had said, but what he said did not make sense. That is all I know."

When questioned on cross-examination concerning what appeared to be a "scratch mark" on the signature, Mrs. Judy answered: "He wanted that scratched because he did not—he said nobody could read it or something like that. He made a remark like that, I don't just remember what the remark was, but anyway it was to the effect that nobody could read it." She further testified to the effect that Mr. Young did not know what he was doing when he signed the deed, and that at the time of signing he was not mentally competent to execute the deed.

Five witnesses testified on behalf of defendants. Phares, Hughart and Hinckley testified to the effect that they saw M. L. Young at different times during November, 1949, but gave no exact date, and that they were of the opinion that Mr. Young had mental capacity to execute a deed. Given testified to the effect that he saw M. L. Young on November 25, 1949, in Charleston at a birthday party, and talked with Mr. Young over the fence for about thirty minutes, and that he believed him to have been of sufficient mental capacity to have executed the deed. The other witness, Joseph V. Cunningham, is a son of the defendant, Lucy A. Young, by a former marriage. He was present at the time of the execution of the deed. After having contradicted testimony of Mrs. Judy in several respects, he testified, on cross-examination: "Q. And I presume Mr. Young was perfectly normal; is that correct? A. Yes, sir, he seemed so. He signed his own name. Q. And he looked fairly well, did he? A. That is right. Q. He looked good? (No answer.) Q. What is your answer to my last question? A. Yes, sir."

Plaintiffs can not complain of the action of the trial court in setting aside the verdict of the jury, for the reason that the verdict of a jury upon an issue out of chancery is merely advisory to the trial chancellor. *Mul-*

*lens* v. *Lilly,* 123 W. Va. 182, 13 S. E. 2d 634. That being true, and the trial court having set aside the verdict in the instant case, we need not consider alleged errors committed during the trial before the jury unless such errors affect the independent findings of the trial chancellor. This is not to say, of course, that the verdict upon every such issue is entitled to no consideration or weight.

Only one of the witnesses who testified on behalf of plaintiffs, Thelma Judy, a notary public, was present at the exact time of the execution of the deed. Only one of the witnesses who testified on behalf of defendants, Joseph V. Cunningham, a son of the defendant, Lucy A. Young, by a former marriage, was present at the exact time of the execution of the deed. The evidence of these two witnesses therefore becomes of prime importance. Defendants contend that the evidence of Mrs. Judy, in so far as it tends to contradict or impeach her certificate of acknowledgment, was inadmissible. The trial court so held and, with that evidence excluded, further held "that the plaintiffs have not borne the burden of proof with respect to the invalidity of the instrument involved". Plaintiffs contend that the evidence of the notary established she was imposed upon by the grantee of the deed at the time of the taking of the acknowledgment, and that the evidence is admissible under the principles laid down in *Jordan* v. *Cousins,* 128 W. Va. 648, 37 S. E. 2d 890.

This Court in several cases has considered the admissibility of testimony of the person certifying to the acknowledgment of an instrument offered for the purpose of impeaching or contradicting the certificate. See *Jordan* v. *Cousins, supra; Roberts* v. *Huntington Development & Gas Company,* 89 W. Va. 384, 109 S. E. 348; *Mankin* v. *Davis,* 82 W. Va. 757, 97 S. E. 296; *Wooldridge* v. *Wooldridge,* 69 W. Va. 554, 72 S. E. 654. In the *Jordan* case the Court held: "1. The testimony of a notary public may be taken to impeach his certificate of acknowledgment concerning the mental capacity of the grantor as against the sole grantee in a deed under attack who was present at its signing and acknowledgment, when the tes-

timony of the notary is to the effect that the certificate was procured by fraud, duress, or imposition." This holding modified the former rule prevailing in this jurisdiction, to the effect that such evidence was always inadmissible. In detailing the evidence in the *Jordan* case relating to the imposition upon the notary, the Court stated: "* * * In the pending case the notary was told that Crawford wished to acknowledge or have him 'notarize' the paper. He was not told that the paper was a deed. He had not seen Crawford for some time and was unfamiliar with his physical and mental condition at the time the paper was signed in his presence. He states that upon seeing Crawford he became dubious and asked him directly if he knew what he was signing. Crawford did not reply but turned to Georgia Cousins sitting beside him, who stated that they were the same papers that they had talked over. Then Crawford signed and the notary certified, plainly depending upon the implied assurance of Georgia Cousins concerning Crawford's capacity * * *." The evidence of the notary was held admissible, given "peculiar weight", under the familiar rule, and the decree of the lower court reversed.

In the instant case we deem the evidence of the notary relating to imposition as strong, if not stronger, than that detailed in the *Jordan* case. Here the notary had been called by or at the instance of the grantee. She had seen the grantor before only one time. She apparently had not been informed of his long and continued illness. The grantee had the proposed deed in her possession and handed it to the notary immediately after she entered the Young home and represented that it was necessary to have the deed executed at once, for the reason that Mr. Young would have to be put back to bed. In five minutes or less time after the notary entered the house the deed was read, the attempted explanation thereof made, the grantor signed, the notary certified to the acknowledgment, and the deed was handed back by the notary to the grantee. Before the arrival of the notary the grantor, though undoubtedly a very sick person, had been placed in a chair beside a table, in preparation for the execution

of the deed, to await the arrival of the notary. Why the haste in the preparation or in the execution of the deed, if not for the purpose of preventing the discovery by the notary of the true mental condition of the grantor? It may be true here, as it was in the *Jordan* case, "that the notary public probably did not exercise the caution" that the circumstances demanded. We can not, however, weigh the lack of caution against the fact of imposition. Failure of the notary to use proper caution is no excuse for the imposition. In the circumstances detailed, we think the evidence of Mrs. Judy admissible, under the holding in the *Jordan* case. Giving that evidence the weight to which we think it entitled, it is, we believe, with the other evidence in the case, sufficient to clearly overcome the evidence of defendants. As above noted, the only witness, other than the notary, present at the exact time of the execution of the deed was the son of the grantee by a former marriage. His evidence is considerably weakened by the fact that the property, if the deed be held valid, would be owned by his mother. The testimony of one of the lay witnesses testifying for the grantee is weakened by the fact that he purchased and accepted a deed conveying land to himself from Mr. Young approximately a year before the date of the deed here involved. None of the lay witnesses saw Mr. Young on the day of the execution of the deed. There can be no doubt, from Doctor Litton's testimony, that the grantor was at times, and only at times, mentally incompetent to execute a deed.

For another, and perhaps stronger, reason we reach the same conclusion as to the action of the trial chancellor. Code, 48-3-7, reads: "Subject to the provisions of section nine of this article, any conveyance or transfer of property, or any interest therein executed by either husband or wife to or in favor of the other, directly or indirectly, shall be valid to the same extent as between other persons; but if any such conveyance or transfer shall be directly attacked, by the person making such conveyance or transfer, or his or her heir, devisee or creditor, the party in whose favor it was made shall have the burden

of showing that such conveyance or transfer was in all respects lawful and valid." The wording of the statute is clear. No ambiguity exists or is contended to exist. In its terms it is imperative. Neither is there the least difficulty in its application. The deed in question is from one spouse to the other. It is directly attacked by an "heir" of the person alleged to have executed it. The "party in whose favor it was made" therefore must carry "the burden of showing that such conveyance or transfer was in all respects lawful and valid", not merely "lawful and valid" with respect to the competency of the grantor, but lawful and valid "in all respects". If we should here assume that the defendants have carried the burden in the instant case as to the question relating to the mental capacity of the grantor, we would still necessarily have to hold that they have not carried the burden as to other necessary requisites of a "lawful and valid" deed. The statute places the "burden of showing" such requisites upon the grantee. They can not be supplied by mere presumptions.

From the conclusions reached, it necessarily follows that the final decree of the Circuit Court of Kanawha County must be reversed. The cause will be remanded to that court for the entry of a decree canceling the deed involved in this controversy.

*Reversed and remanded.*

HAYMOND, JUDGE, dissenting:

I can not concur in the decision of the majority which reverses the decree of the circuit court and remands this cause to that court with directions that it cancel the deed from M. L. Young to his wife, the defendant Lucy A. Young.

Though the well established general rule in this jurisdiction is that a grantor is presumed to be sane and possessed of sufficient mental capacity to make a deed at the time of its execution and that ordinarily the burden of proving the incompetency of the grantor rests upon him

who attacks the validity of the deed, *Jordan* v. *Cousins,* 128 W. Va. 648, 37 S. E. 2d 890; *Ellison* v. *Lockard,* 127 W. Va. 611, 34 S. E. 2d 326; *Wade* v. *Sayre,* 96 W. Va. 364, 123 S. E. 59; *Martin* v. *Moore,* 92 W. Va. 671, 115 S. E. 833; *Carrigan* v. *Davis,* 84 W. Va. 473, 100 S. E. 91; *White* v. *Mooney,* 73 W. Va. 304, 80 S. E. 844; *Black* v. *Post,* 67 W. Va. 253, 67 S. E. 1072; *McPeck* v. *Graham,* 56 W. Va. 200, 49 S. E. 125; *Farnsworth* v. *Noffsinger,* 46 W. Va. 410, 33 S. E. 246; *Delaplain* v. *Grubb,* 44 W. Va. 612, 30 S. E. 201, 67 Am. St. Rep. 788; *Buckey* v. *Buckey,* 38 W. Va. 168, 18 S. E. 383; *Jarrett* v. *Jarrett,* 11 W. Va. 584, I agree that, in this instance, the parties to the deed at the time of its execution and delivery being husband and wife, the burden of establishing the mental capacity of the grantor to make it is upon the grantee by virtue of Section 7, Article 3, Chapter 48, Code, 1931. That section provides, in part, that "any conveyance or transfer of property, or interest therein executed by either husband or wife to or in favor of the other, directly or indirectly, shall be valid to the same extent as between other persons; but if any such conveyance or transfer shall be directly attacked, by the person making such conveyance or transfer, or his or her heir, devisee or creditor, the party in whose favor it was made shall have the burden of showing that such conveyance or transfer was in all respects lawful and valid." In my opinion, however, the competent evidence introduced in behalf of the defendants concerning the validity of the deed here under attack by the plaintiffs, some of whom are heirs of M. L. Young, and his mental capacity to make it, fully satisfies the requirement of the statute with respect to the burden of proof in connection with those matters. The only ground relied upon by the plaintiffs in this Court to set aside the deed as invalid is the alleged mental incapacity of the grantor at the time of its execution.

As pointed out in the majority opinion, the only evidence directly relating to the mental capacity of the grantor, M. L. Young, when the deed was executed, which is the time at which his mental capacity must be determined, consisted of the testimony of Thelma L. Judy, the

notary, who testified in behalf of the plaintiffs, and the testimony of Joseph V. Cunningham, a son of the grantee, Lucy A. Young, by a former marriage, who testified in behalf of the defendants.

The testimony of Dr. Litton who had treated Mr. Young as his physician, and whose last visit to him before the execution of the deed on November 15, 1949, was eleven days previously on November 4, 1949, was to the effect that Mr. Young was afflicted with arteriosclerosis and other ailments which at times impaired his mentality to the extent of rendering him incapable of knowing exactly what he was doing and causing him to follow suggestions but which did not prevent him from having lucid intervals at other times. This witness expressly testified on his examination in chief that, though Mr. Young was sick on November 4, 1949, he was "all right" at times and "at times he was incapacitated due to his illness." On cross-examination he was asked these questions and gave these answers: "Q. So far as you know he could have been mentally competent at the time this deed was executed? A. He could have been. Q. You are not prepared to say he was mentally incompetent on that date, are you? A. I am not because I did not see him on that date." As the foregoing testimony of this witness indicates clearly that he did not know the mental condition of M. L. Young when he executed the deed, his testimony is of little or no value on that controlling question.

The testimony of the notary which impeached her official certificate of the acknowledgment of the signature of M. L. Young to the deed dated November 15, 1949, which is the only evidence given by any witness called by the plaintiffs who was present when the deed was executed concerning the mental condition of the grantor at that time, was clearly inadmissible. The circuit court so held and rejected her impeaching testimony. This action of the circuit court was clearly right. The majority erroneously holds this evidence to be admissible upon the authority of *Jordan* v. *Cousins*, 128 W. Va. 648, 37 S. E. 2d 890. In that

case this Court took an extremely doubtful position in permitting a notary to impeach his official certificate of the acknowledgment of a deed by the grantor, an eighty year old negro named Alex Crawford to the grantee, a young colored woman named Georgia Cousins, which was signed and acknowledged while Crawford and Cousins were seated in an automobile. In the opinion in the *Jordan* case, in permitting the notary to impeach his certificate of acknowledgment, this Court said: "In the pending case the notary was told that Crawford wished to acknowledge or have him 'notarize' the paper. He was not told that the paper was a deed. He had not seen Crawford for some time and was unfamiliar with his physical and mental condition at the time the paper was signed in his presence. He states that upon seeing Crawford he became dubious and asked him directly if he knew what he was signing. Crawford did not reply but turned to Georgia Cousins sitting beside him, who stated that they were the same papers that they had talked over. Then Crawford signed and the notary certified, plainly depending upon the implied assurance of Georgia Cousins concerning Crawford's capacity. Within twenty days Crawford was officially declared incompetent. This occurred while he was living at the home of Georgia Cousins and at a hearing of which she says she knew nothing. Under these circumstances, while it is true that the notary public probably did not exercise the caution that it developed the circumstances demanded, the fact that he was officially imposed upon is quite apparent and therefore his testimony, even to the extent of impeaching his own certificate, can be heard."

In the case at bar the material facts in connection with the execution of the deed are entirely different and the difference in those facts clearly distinguishes this case from the *Jordan* case and renders its holding on this point wholly inapplicable.

In the *Jordan* case the deed was executed while the grantor and the grantee were sitting in an automobile apparently in a public place. The deed was not read to the

grantor who made no reply when the notary asked him if he knew what he was signing and the grantee assured the notary that the grantor knew "what he was signing." Twenty days later the grantor was officially declared to be mentally incompetent and eighteen days after that he died. There was no family relationship between Crawford and Georgia Cousins who apparently was an acquaintance who for sometime had supported and maintained him and acted as his housekeeper.

In the case at bar the grantee, to whom a conveyance of property by her husband, the grantor, was a perfectly natural and usual transaction, made no representation, by word or act, with respect to the mental capacity of the grantor. The notary did not inquire of her or any other member of the family present concerning the mental condition of the grantor, which she had an opportunity to observe during the five minutes which she says elapsed between the time of her arrival and the execution and the acknowledgment of the deed by the grantor; and she did not disclose or indicate to any member of the family that she entertained any doubt as to his mental capacity at any time during her visit of at least twenty minutes in the home. If she entertained any such doubh, which she says she imparted to her husband just before she left, it was her imperative duty to disclose it to the grantor and the grantee and to attempt to revoke her certificate which she had a fair opportunity to do. According to her testimony, instead of doing either, she read the deed to the grantor; asked him if he understood it to which he made no reply; told him he was "a very sick man", which admittedly he was; assisted him in his act of signing; heard him make a remark about a "scratch mark" which indicated that he knew he had made some sort of unsatisfactory "scratch" or mark in his signature that apparently disturbed him; certified his acknowledgment; and gave the executed deed to the grantee. The only conduct of the grantee, mentioned in the testimony of the notary, which calls for comment, consisted of her request to the notary to read the deed and to take promptly the acknowledgment

of the grantor, who was very tired, so she "could put him back to bed" and her act in receiving and putting "away" the deed after it was executed and acknowledged. This conduct was entirely proper and was such as might reasonably be expected from any honest and considerate person upon the rather uncommon occasion of the execution of a deed by a sick and aged grantor and the foregoing acts of the grantee, if they in fact occurred, did not, in any sense, constitute an express or implied representation or assurance with respect to the mental condition of the grantor at the time.

From the facts just enumerated it is crystal clear to me that imposition upon the notary, if any there was, originated with the notary herself and was entirely self imposed. The grantee did not mislead or impose upon the notary but instead the notary imposed upon herself. For this reason the rule of the *Jordan* case has no application and the notary should not be permitted to impeach her solemn official certificate of acknowledgment which she did not undertake to do until many months after the death of the grantor. If a notary, under the established facts of this case, can impeach his or her solemn certificate of acknowledgment, such certificate, in any and every instance, is vulnerable to attack at any future time by any unscrupulous dissatisfied person and the effect of any regularly executed and acknowledged muniment of title is impaired or destroyed. The impeaching testimony of the notary was manifestly incompetent and it was rightly rejected by the circuit court.

But even if the impeaching testimony of the notary could correctly be held to be admissible, it is of little, if any, weight or importance and does not justify or support the view of the majority that M. L. Young was not mentally competent to make the deed here under attack. It is essentially a self-contradiction of the notary in that it repudiates her prior official certificate which necesssarily implied that she considered and believed him to be mentally competent at the time she made the certificate.

*Jordan* v. *Cousins*, 128 W. Va. 648, 37 S. E. 2d 890. In other words she solemnly declared by her certificate that he was possessed of sufficient mentality to execute and acknowledge the instrument when he signed it on November 15, 1949, but nearly three years later, when testifying as a witness on November 6, 1952, long after the grantor's death in December, 1950, she said he was not mentally capable at the very time she solemnly and officially certified that he was. Such testimony, in my judgment, is unworthy of belief and should not be accorded any persuasive or convincing force or effect. When a person directly contradicts a prior statement by a later inconsistent statement the subsequent statement should be viewed with caution and its truthfulness should generally be regarded as doubtful in the absence of clear and convincing supporting evidence, emanating from a different source, which does not appear in this case. I am unwilling to set aside a deed by a husband to his wife on the strength of such testimony; but that is exactly what the holding of the majority does.

The questionable testimony of the notary is not only contradicted by her prior official certificate which she now seeks to overthrow, but it is also directly refuted by the testimony of Joseph V. Cunningham, a stepson of the grantor and a son of the grantee by a former marriage, and the only other witness present when the deed was executed and acknowledged who testified in the case. His testimony was that he was present when the deed was executed and acknowledged by M. L. Young, in his home in the evening of November 15, 1949; that he was there when Mrs. Judy, the notary, and her husband arrived; that they were accompanied by Glenn R. Young, a son of M. L. Young and one of the defendants in this case, who came and left with them in their automobile; that Mr. Judy brought the draft of the deed with him and gave it to Lucy A. Young who then handed it to the notary; that the notary read the deed twice to M. L. Young; that the notary asked him "if that was the deed he wanted to execute or if he understood it"; that he said it was; that he then signed it; that the notary did not steady his hand

while he signed it; that after he had signed the deed the notary took his acknowledgment of his signature; and that the notary then gave the deed to Lucy A. Young. He further testified that Lucy A. Young did not "put Mr. Young to bed"; that M. L. Young signed the deed without assistance from the notary but "did it all himself"; that at the time he seemed to be perfectly normal; and that he "looked fairly well". The majority apparently accords to the testimony of this witness less weight than it gives to the self-contradictory testimony of the notary solely because he was a son of the grantee by a former marriage. That relationship between the grantee and this witness is unimportant and carries no implication that he would testify falsely because of the remote contingency that he might at some future time receive or inherit the property or some interest in it from his mother. But, whatever may have been his interest and its effect upon the credibility of his testimony, his evidence on this point contains no self-contradictions comparable to those contained in the evidence of the notary and, for that reason, it should be regarded with less caution and should be given more weight than the self-contradictory testimony of the notary.

The testimony of Cunningham to the effect that M. L. Young was mentally capable at the time he executed and acknowledged the deed is supported by the less direct evidence of four acquaintances of M. L. Young, three of whom were his neighbors, who, though not present when the deed was executed and acknowledged, saw him at different times during the month of November, 1949, and testified that on those occasions he appeared to be normal and mentally competent to execute a deed. The evidence of Cunningham and these additional witnesses, introduced in behalf of the defendants, to the effect that M. L. Young was mentally capable to execute the deed clearly outweighs the evidence to the contrary, introduced in behalf of the plaintiffs, including the testimony of the notary, and is sufficient to satisfy the burden of proof upon that issue imposed by Section 7, Article 3, Chapter 48, Code, 1931, upon the grantee, Lucy A. Young, as the

widow of M. L. Young, who asserts the mental capacity of the grantor at the time the deed in controversy was executed.

As already indicated, the evidence bearing upon the question of the mental competency of the grantor is conflicting; and this Court has repeatedly held that the findings of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless clearly wrong or against the preponderance of the evidence. *Mann* v. *Peck*, 139 W. Va. 487, 80 S. E. 2d 518; *Gaymont Fuel Company* v. *Price*, 138 W. Va. 930, 79 S. E. 2d 96; *Rohrbaugh* v. *Rohrbaugh*, 136 W. Va. 708, 68 S. E. 2d 361; *Aker* v. *Martin*, 136 W. Va. 503, 68 S. E. 2d 721; *Holt Motors* v. *Casto*, 136 W. Va. 284, 67 S. E. 2d 432; *Adams* v. *Ferrell*, 135 W. Va. 463, 63 S. E. 2d 840; *Bennett* v. *Neff*, 130 W. Va. 121, 42 S. E. 2d 793; *Hardin* v. *Collins*, 125 W. Va. 81, 23 S. E. 2d 916; *Shipper* v. *Downey*, 119 W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling*, 118 W. Va. 308, 190 S. E. 537; *Tynes* v. *Shore*, 117 W. Va. 355, 185 S. E. 845; *Kincaid* v. *Evans*, 106 W. Va. 605, 146 S. E. 620; *Ramsey* v. *England*, 85 W. Va. 101, 101 S. E. 73; *Bailey* v. *Calfee*, 49 W. Va. 630, 39 S. E. 642. Under this well established rule, the finding of the circuit court in favor of the mental capacity of the grantor M. L. Young, to execute the deed to his wife, the defendant Lucy A. Young, made and acknowledged by him on November 15, 1949, being amply supported by the evidence, should be approved and adopted and the final decree of that court dismissing this suit should be affirmed upon this appeal; and, for the reasons set forth in this dissent, I would so hold.